IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1822-02






JUAN MANUEL TORRES, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY






 Price, J., delivered the opinion of the Court, in which Meyers, Womack,
Johnson, Keasler, Hervey, Holcomb, and Cochran, J.J., joined. Keller, P.J.,
dissents.


O P I N I O N 



 We granted review in this case to determine whether the Court of Appeals erred in
concluding that the appellant had not laid the proper predicate before attempting to
introduce evidence of the deceased's character. We conclude that the Court of Appeals did
err because there was ample evidence of a fray and an act of aggression in evidence before
the appellant tried to introduce the character evidence.

 The appellant was convicted of murder in the 195th Judicial District Court, Dallas
County. The appellant appealed the conviction arguing that the trial court erred in excluding
character evidence of the deceased. The Dallas Court of Appeals affirmed, and the
appellant petitioned for discretionary review. Torres v. State, No. 05-97-01308-CR, 2000
Tex. App. LEXIS 4184 (Tex App.-- Dallas, June 21, 2000) ("Torres I"). This Court
granted review and held that the character evidence regarding the deceased's prior violent
behavior was admissible to show that the deceased was the first aggressor. Torres v. State,
71 S.W.3d 758, 762 (Tex. Crim. App. 2002) ("Torres II"). We remanded the case to the
Court of Appeals to determine whether the alleged error was properly preserved for
appellate review, and if properly preserved, whether the proper predicate was laid for the
introduction of the evidence. Ibid. Depending on the resolution of those issues, this Court
asked the Court of Appeals to perform a harm analysis. Ibid.

 On remand, the Court of Appeals determined that the appellant did properly preserve
the error for review, but did not lay the proper predicate for the introduction of the
character evidence. Torres v. State, No. 05-97-01308-CR, 2002 Tex. App. LEXIS 6579
(Tex. App.-- Dallas Sept. 6, 2002) ("Torres III"). As a result, the Court of Appeals did not
perform a harm analysis. 

I. Facts


 The decedent, Franklin Valdez, and Roxanne Espinosa dated for several years. Both
lived in a second-floor apartment with Roxanne's aunt, Diane. Roxanne and Valdez's
relationship was turbulent. Valdez had assaulted Roxanne before because he suspected she
was seeing other men. 

 The week of Valdez's death, Roxanne broke up with him and moved out of the
apartment because of another assault. While she was not living in her aunt's apartment,
Roxanne stayed with friends, including the appellant. During this time, the appellant
learned from Roxanne that Valdez had assaulted her on previous occasions and was
currently looking for the appellant. 

 Later in the week, Diane told Roxanne that Valdez had moved out of the apartment. 
When she heard this, Roxanne returned to the apartment. She spoke to Valdez that day. He
told her that he loved her and would leave her alone. Because of this conversation and the
fact that Valdez had removed his belongings from the apartment, Roxanne assumed that he
would not return. 

 Although Roxanne did not think that Valdez would attack the appellant, she thought
that if he were to look for the appellant, he would look for him in the appellant's home. 
Since Roxanne did not think Valdez would return to her aunt's apartment, she convinced the
appellant to stay with her there. Roxanne did not tell the appellant that Valdez might come
to her aunt's apartment; nevertheless, the appellant brought a gun with him. Roxanne
testified that she did not sleep well the night before the killing and woke up repeatedly.

 The next morning, the appellant awoke and went to the bathroom to prepare for
work. Around 6:30 a.m., upon returning to the bedroom, he and Roxanne heard a noise
coming from outside. Roxanne saw Valdez climbing up the balcony, yelled, "It's him," and
then ran into Diane's room and called 911. 

 While Roxanne was on the phone with the police, she heard a thump and two
gunshots. Roxanne remained in Diane's bedroom until the police arrived. The police found
Valdez in a sitting position on the commode with a fatal bullet wound to his face and a
superficial bullet wound to his abdomen. The police did not find the appellant at the scene,
but later apprehended him in Colorado. 

 At trial, the appellant raised the issue of self-defense. The State called both
Roxanne and Diane to testify. Diane was the last witness called by the State. Before Diane
took the stand, a number of individuals testified about Valdez's behavior on the days before
the murder and the day of the murder. Valdez's father and a friend both testified that the
deceased was planing to pick up the remainder of his belongings from Diane's apartment. 
The police testified to the crime-scene evidence, and Roxanne testified to Valdez's
behavior that morning. Roxanne testified, that on the morning of the murder, she was in bed
when she heard a noise and saw Valdez climbing onto the balcony. She thought he was in a
jealous rage. She then testified that she shouted, "It's him," and then ran into her aunt's
bedroom, and dialed 911. 

 During Diane's testimony, the defense counsel sought to introduce character
evidence of Valdez to show that he was the first aggressor. The State objected, and the trial
court excused the jury to make a ruling on the admissibility of the testimony. Outside the
presence of the jury, Diane testified that, two days before his death, Valdez had climbed
through the second-story window in her bedroom and asked for Roxanne. When Diane
responded that she did not know where Roxanne was, Valdez replied, "If you don't tell me
I'm going to do something to you and your kids." Diane testified that she feared for her
life. 

 The trial court excluded Diane's testimony. The appellant was convicted and
sentenced to 25 years imprisonment. The appellant appealed, arguing that the excluded
testimony was relevant to his defense claim that Valdez was the first aggressor. The Court
of Appeals affirmed the conviction, holding that the excluded testimony was relevant only
as character-conforming evidence. 

II. Analysis


 When a defendant in a homicide prosecution raises the issue of self-defense, he may
introduce evidence of the deceased's violent character. Tex. R. Evid. 404(a)(2); Tate v.
State, 981 S.W.2d 189, 192-193 (Tex. Crim. App. 1998); Thompson v. State, 659 S.W.2d
649, 653 (Tex. Crim. App. 1983). Specific acts of violence may be introduced to
demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the
deceased was the first aggressor. Torres II, 71 S.W.3d at 760. However, such specific acts
of violence are admissible only to the extent that they are relevant apart from showing
character conformity. Ibid. This Court has held that specific, violent acts are relevant apart
from showing character conformity in the context of proving that the deceased was the first
aggressor by demonstrating the deceased's intent, motive, or state of mind. Ibid. Because
the specific act is probative of the deceased's state of mind or intent, the witness must
know, but the defendant need not know of the act. Id. at 761; Jenkins v. State, 625 S.W.2d
324, 326 (Tex. Crim. App. 1981). 

 There must be some evidence of aggression by the deceased during the events that
gave rise to the criminal charges in the case before the defendant may introduce evidence
of a prior specific violent act that tends to explain the deceased's later conduct. Torres II,
71 S.W.3d at 761. Thus, the question is whether there was evidence of aggression by
Valdez that raised the issue of self-defense before Diane's testimony was offered. 

 On remand, the Court of Appeals held that the appellant had not yet raised the issue
of self-defense when Diane's testimony was introduced, and therefore, it held that he had
not laid the proper predicate. Torres III, No. 05-97-01308-CR, slip op. at 8, 2002 Tex.
App. LEXIS 6579. We disagree. In Thompson, we held that, when the evidence of
aggression is ambiguous, unrelated specific acts of violence committed by the deceased are
admissible to explain the deceased's conduct and help determine who was the aggressor
was in the fray. Thompson, 659 S.W.2d at 653-654. We relied on Thompson in reversing
the Court of Appeals in Torres II. In that case, we held that some evidence of aggression
must have been admitted before the appellant may introduce evidence of a prior specific act
of violence by the deceased. Torres II, 71 S.W.3d at 761. The proper predicate for the
specific violent prior act by the deceased is a some act of aggression that tends to raise the
issue of self-defense, which the violent act may then help clarify. Thus, it is not necessary
for the defendant to raise the issue of self-defense before the introduction of the character
evidence as long as there is some evidence of an act of aggression by the deceased. 

 For Diane's testimony to be admissible at the time it was offered, there must have
been evidence of an act of aggression by the deceased that tends to raise the issue of self
defense. We find the deceased's action of climbing up the second-story balcony, uninvited
and unannounced, at 6:30 a.m. constitutes an act of aggression. Even if Valdez's purpose of
retrieving his belongings was not aggressive, the manner in which he pursued his purpose
was aggressive. The conventional manner to retrieve belongings from a residence in which
you no longer reside is to knock on the door at a reasonable hour and wait to be invited
inside. Moreover, Roxanne perceived this action as aggressive; she fled the room and
dialed 911.

 Because we find Valdez's action of climbing up a balcony, uninvited, at 6:30 a.m.
aggressive, it tends to raise the issue of self-defense. It is therefore appropriate to allow
the appellant to introduce the previous act of climbing in the window and threatening Diane
and her children because it may help clarify Valdez's purpose in climbing up the balcony. 
See Tate v. State, 981 S.W.2d 189, 193 (Tex. Crim. App. 1998) (holding that defendant
may introduce evidence of a threatening statement made by the deceased to a third party to
prove the deceased's intent, motive, or state of mind at the time of the murder). 

 Diane testified that Valdez entered her bedroom window and threatened her. This
behavior is remarkably similar to the deceased's behavior of climbing up the balcony to
gain entry to the apartment and may shed light on Valdez's motive in entering the apartment. 
It was therefore relevant and should have been admitted at trial. Because the Court of
Appeals misconstrued our holding in Torres II, their analysis regarding the importance of
the actual entry of Valdez and the proof of a fray are inappropriate. 

 The Court of Appeals reasoned that prior to Diane's testimony, the State had shown
only that Valdez was on the balcony, but not that he had actually entered the apartment. 
Torres III, No. 05-97-01308-CR, slip op. at 8, 2002 Tex. App. LEXIS 6579. We disagree
with the Court of Appeals's conclusion for two reasons. First, as we explained above,
Valdez's act of climbing the balcony, uninvited, during the early hours of the morning was
an act of aggression; the appellant need not show that Valdez was physically inside the
apartment. Second, Valdez "entered" the apartment within the meaning of that term in the
criminal trespass statute, Texas Penal Code Section 30.05(b)(1).

 Under Penal Code Section 30.05 a person commits criminal trespass if he enters a
building of another without the owner's consent when he had notice that entry was
forbidden. Tex. Penal Code § 30.05(a). The term "building" is defined by Penal Code
Section 30.01(2), in part, as "any enclosed structure intended for use as a habitation . . ." 
Tex. Penal Code § 30.01(2). A habitation includes "each structure appurtenant to or
connected with the structure." Tex. Penal Code § 30.01(1). The balcony of the apartment
is part of the habitation, and thus, Valdez entered the habitation when he climbed onto the
balcony for purposes of the criminal trespass statute. We hold that when Valdez climbed
up to the balcony he performed an act of aggression; he entered the apartment without
permission.

 The Court of Appeals further concluded that, at the time the testimony was
introduced, there was no proof of a "fray" between the appellant and the deceased, and
therefore, no testimony could be offered to determine who was the aggressor in the fray,
because it was not yet before the jury. Torres III, No. 05-97-01308-CR, slip op. at 8, 2002
Tex. App. LEXIS 6579. The Court of Appeals concluded that the appellant was required to
testify to the existence of the fray. We disagree. It is unnecessary for there to be evidence
of a fray when there is evidence of an act of aggression by the deceased. Moreover, we find
that there was ample evidence in the record to demonstrate the existence of a fray when
Diane was called to the stand. 

 Before offering Diane's testimony, the State introduced evidence from police
officers, Roxanne, and Valdez's family and friends. Valdez's father and friends testified
that he was planning on returning to the apartment to pick up the rest of his belongings. 
Police officers testified that Valdez was shot in the face when they found his body in the
bathroom. Police officers also testified that they found the shower curtain rod displaced in
the bathroom. In addition, Roxanne testified that she saw the deceased climbing up the
balcony, that she heard a thump and two gunshots, and that she called 911 because she was
afraid. The combination of this testimony provides sufficient evidence for a jury to
conclude that a fray did in fact occur. 

III. Conclusion


 We hold that Valdez's action of climbing up to the second-story balcony outside a
bedroom window, unannounced and uninvited at 6:30 a.m., was an act of aggression. 
Diane's testimony would have provided evidence to explain this conduct and was therefore
admissible and relevant at the time it was offered. Roxanne's testimony laid the proper
predicate for Diane to testify regarding Valdez's previous behavior of climbing in the
window and threatening her. 

 We also do not think it was necessary for the appellant to re-offer Diane's
testimony after the appellant testified about the fray. First, the predicate had already been
laid. As we held above, there was adequate evidence existing at the time Diane testified that
Valdez performed an aggressive act and that there had been a fray. Also, the trial court
made it clear that it was not going to allow the testimony about the prior threat by Valdez. 

 We reverse the judgment of the Court of Appeals and remand the case for a harm
analysis.

Delivered: October 15, 2003.

Publish.