NO. 12-03-00116-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
RONNIE WORTHAM,                                        §   APPEAL FROM THE 145TH
APPELLANT

V.                                                                          §   JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                          §   NACOGDOCHES COUNTY, TEXAS
                                                                                                                                                              
MEMORANDUM OPINION
            A jury convicted Ronnie Wortham (“Appellant”) of murder, sentenced him to ninety-nine years
of imprisonment, and assessed a $10,000 fine. Appellant raises nine issues on appeal challenging the
exclusion of certain evidence. We affirm. 
 
Background
            In the early morning hours of March 10, 2002, Appellant and the victim, Kenneth Teal, were
both inside the Club Infinity, a nightclub in Nacogdoches County. While inside the club, Teal verbally
threatened to kill Appellant and his mother.


 After this threat, Appellant exited the club and walked
approximately one hundred yards to his vehicle, which was parked at the rear of the parking lot. 
Reaching his vehicle, he retrieved a handgun, put on a large black hooded jacket although it was not
cold outside, and tried to regain admittance into the club. Even after several offers of money, the club
personnel refused to allow him back in the club. A security guard instructed Appellant to leave the
club and the property. Instead, Appellant stood against the building near the exit door. 
            As the club was closing and the patrons were leaving, Appellant saw Teal (also known as
“Pooh”) exit. With his hands in his pockets, Appellant walked directly toward Teal, approaching him
from behind. He called out, “Pooh!” As Teal turned his head to look, Appellant pulled his gun from
his pocket, put it to Teal’s head and fired it, killing Teal. Appellant then turned toward the officers
who were standing at the club entrance, dropped his gun, and said, “It’s all good.” 
            Appellant was charged by indictment with murder,


 a first degree felony, and pleaded not guilty
at trial. A jury found him guilty as charged. At the punishment phase, the State sought enhancement
of the punishment by introducing Appellant’s prior conviction of deadly conduct. After hearing the
punishment evidence, the jury found the enhancement allegation true and assessed punishment of
ninety-nine years of imprisonment and a fine of $10,000.


 This appeal followed.
 
            Issues Presented
            In issues one through eight, Appellant asserts the trial court erred by refusing to admit evidence
of prior specific acts of violence allegedly committed by the victim, which Appellant contends would
have established the basis for his contention that he acted in self-defense. In his ninth issue, Appellant
asserts that the trial court erred when it admitted a redacted autopsy report that excluded descriptions
of various tattoos appearing on Teal’s body.
 
Standard of Review
            We review the trial court’s decision to admit or exclude evidence under an abuse of discretion
standard. Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). An abuse of discretion occurs
when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or
unreasonably. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). In determining
whether a trial court abused its discretion, we review the trial court’s ruling in light of what was before
the trial court at the time the ruling was made. Hoyos v. State, 982 S.W.2d 419, 422 (Tex. Crim. App.
1998). This standard requires an appellate court to uphold a trial court’s admissibility decisions when
they are within the zone of reasonable disagreement. See Montgomery, 810 S.W.2d at 391 (op. on
reh’g).
 
Evidence of Victim’s Prior Conduct
            Appellant asserts the trial court erred when it refused to allow testimony from eight witnesses
who would have described events that occurred in the days and weeks before the shooting. These
events included verbal threats from Teal as well as a physical altercation in which Appellant hit Teal
in response to Teal’s degrading comments to Appellant’s female cousin. According to Appellant, this
testimony would have established the basis for his contention that he shot Teal in self-defense. 
Applicable Law
            When a defendant in a homicide prosecution raises the issue of self-defense, he may introduce
evidence of the deceased’s violent character. Tex. R. Evid. 404(a)(2); Tate v. State, 981 S.W.2d 189,
192-93 (Tex. Crim. App. 1998). To demonstrate the reasonableness of the defendant’s fear of danger
or to demonstrate that the deceased was the first aggressor, specific acts of violence may be introduced. 
Torres v. State, 117 S.W.3d 891, 894 (Tex. Crim. App. 2002). However, such acts are admissible only
to the extent that they are relevant apart from showing character conformity. Id. Specific violent acts
are relevant apart from showing character conformity when the acts are used to prove the deceased was
the first aggressor by demonstrating the deceased’s intent, motive, or state of mind. Id. at 894-95. 
However, there must be some evidence of aggression by the deceased during the events that gave rise
to the crime charged before the defendant may introduce evidence of a prior specific violent act. Id.
at 895. Thus, before the testimony of the eight witnesses could be offered in this case, there must have
been evidence of aggression by Teal close to the time of the shooting that raised the issue of self-defense. See id.
Discussion
            According to the testimony at trial, Officer Henri Cruse, an officer with the Nacogdoches Task
Force, was working security at the club the night of the shooting and was dressed in full uniform,
armed, and plainly identified as a police officer. Also present was Officer John Hearnsberger with the
Nacogdoches County Sheriff’s Department and Bruce Walker, a “ride-along civilian” who was in
peace officer training. Hearnsberger was sent to the club that night because area residents had
complained that the county road was blocked by cars from the club. Once Hearnsberger informed
Cruse of the parking problem, an announcement was made in the club that it was closing time. Cruse,
Hearnsberger, and Walker were standing outside in front of the club at that time.
            The record also includes testimony that while talking outside the club, Cruse and Walker both
noticed Appellant standing against the wall, wearing a dark-colored jacket with the hood over his
head. They estimated that Appellant stood there at least ten to fifteen minutes with his hands in his
pockets. As patrons were leaving the club, Cruse saw the hooded man, later identified as Appellant, 
“make a beeline” to Teal, say something to him, pull out a gun, and shoot him in the head. Teal
dropped to the ground. Cruse saw there was nothing in Teal’s hands and testified that Teal had made
no sudden or threatening moves. After shooting Teal, Appellant turned toward the officers and
dropped the gun. Eventually, backup officers arrived and Appellant was arrested and taken from the
scene. No weapons were found on Teal’s body. 
            Clarence Johnson, a certified law enforcement officer, also witnessed the shooting. Johnson
was standing within three to four feet of Teal, and he testified that Teal was wearing a short-sleeved
shirt without a jacket. He also testified that Teal did not have anything in his hands nor did he make
any threatening moves toward Appellant. In fact, as Appellant approached Teal, Teal had not even
made a complete turn toward Appellant before he was shot. 
            None of the witnesses at trial described any aggressive action by Teal close to the time of the
shooting. Because the evidence did not raise the issue of self-defense, the excluded testimony is not
relevant. See id. Therefore, the trial court did not abuse its discretion in excluding the evidence. We
overrule Appellant’s issues one through eight.
 
Description of Tattoos
            For purposes of establishing Teal’s cause of death, the State offered a redacted autopsy report
into evidence. The unredacted version included a list of various tattoos appearing on Teal’s body,
including (1) the words “let’s get blowed” with a design of a marijuana leaf, (2) the words “east side,”
(3) the words “the real gambler” with playing cards, (4) a nude woman, (5) the words “puppet strings
and an evil appearing clown,” (6) the words “high till you die” with a design of marijuana leaves, (7)
marijuana leaves with the word “Pooh,” and (8) a black panther with tracks and the words, “on the
prowl.” The trial court admitted into evidence the redacted version of the autopsy report.
            Appellant claims the trial court erred in admitting the redacted autopsy report after overruling
Appellant’s request to offer the entire report under the rule of optional completeness. See Tex. R.
Evid. 107. The State asserts that the tattoos are not relevant because the autopsy report was offered
simply to establish Teal’s cause of death. It further contends that even if the descriptions are relevant,
they should be excluded because any probative value is substantially outweighed by the danger of
unfair prejudice. 
            According to Rule 107, when one party offers into evidence a portion of a writing or recorded
statement, the other party may inquire into and offer into evidence its entire contents. Tex. R. Evid.
107. The purpose of the rule is to eliminate and guard against any confusion or false impression that
might occur when referring to a portion of a statement taken out of context. Pinkney v. State, 848
S.W.2d 363, 366 (Tex. App.–Houston [1st Dist.] 1993, no pet.). However, one of the limitations on
the scope of the completeness rule is that only parts or items germane to the item offered “on the same
subject” become admissible. See Jernigan v. State, 589 S.W.2d 681, 694-95 (Tex. Crim. App. 1979). 
The record confirms that the State used the autopsy report solely to establish Teal’s cause of death. 
Because the various tattoos are not germane to the same subject, the trial court did not abuse its
discretion in admitting the redacted autopsy report. Consequently, Appellant’s ninth issue is
overruled.
 
Disposition
            Having overruled each of Appellant’s nine issues, we affirm the trial court’s judgment.
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
Opinion delivered September 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(DO NOT PUBLISH)