Affirmed and Memorandum Opinion filed September 20, 2007








Affirmed and Memorandum Opinion filed September 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00238-CV

_______________

 

IN THE MATTER OF C.R.G

 

                                                                                                                                               


On Appeal from the County Court at Law
No. 2

Fort Bend County, Texas

Trial Court Cause No. 10882

                                                                                                                                               


 

M E M O R A N D U M    O P I N I O N

C.R.G. (ACraig@)[1]
was adjudicated delinquent for four counts of assault.  On appeal, he challenges
the trial court=s exclusion of testimony concerning a complaining witness=s violent acts and reputation.  In
addition, he contends the evidence is factually insufficient to support one of
the jury=s findings.  We affirm.








I.  Factual and Procedural History

On March 9, 2004, the Fort Bend County (AFBC@) District Attorney filed a petition
alleging Craig had engaged in delinquent conduct.  In the live pleading at the
time of Craig=s adjudication hearing, he was alleged to have (1) assaulted his former
girlfriend, C.N. (AConnie@) on three separate occasions; (2) assaulted his older
sister, A.B. (AAnn@); (3) criminally trespassed on the property of Connie=s mother; and (4) sexually assaulted
Connie.  

An immediate custody order was issued on October 18, 2004. 
According to a detention report completed by an FBC juvenile detention officer,
Craig turned himself in to the FBC juvenile probation department on October 25,
2004.  After a detention hearing on October 27, 2004, Craig was placed in the
custody of the FBC juvenile court and ordered detained at the juvenile
detention center.  This detention order was extended several times pending
Craig=s adjudication, and he remained in
detention pending his adjudication hearing, which began with jury selection on
January 10, 2006.








At Craig=s adjudication hearing, several
witnesses testified regarding Craig=s alleged assault and sexual assault
of Connie.  Craig attempted to introduce testimony regarding Connie=s alleged assaults on specific
individuals and her reputation for violence, but the trial court excluded much
of this testimony.[2]  In addition,
Craig=s sister, Ann, testified regarding
Craig=s alleged assault of her on January
23, 2004.  She stated that she and Craig had gotten into an argument, and were
hitting each other.  According to Ann=s live testimony, she leaned forward
to hit Craig and collided with his arm.  She further testified that she had
signed an affidavit of non-prosecution.  But according to Deputy Charles
Johnson, who responded to the 911 call of Craig=s mother reporting this assault, he
observed a bump on Ann=s head.  Johnson also testified that Craig told him that he
had hit his sister because she pushed him.  Johnson stated that because Craig=s mother wanted Craig taken into
custody following this incident, Johnson transported Craig to the juvenile
detention facility.[3] 

Craig=s adjudication hearing concluded on
January 26, 2006.  After receiving the charge of the court, the jury found Atrue@ on each of the four assault
allegations and Anot true@ on the allegations of sexual assault and criminal trespass. 
Thus, appellant was adjudicated delinquent; however, the trial court entered an
order of no disposition on May 9, 2006, stating:

The Court previously adjudicated this child as a child who engaged in
delinquent conduct on the 10th [sic] day of January, 2006.  After
reviewing the evidence the Court finds that the child is in need of
rehabilitation and that the protection of the public and of the child require
that a disposition be made, but due to the child=s age no disposition can be made.[[4]]

IT IS THEREFORE[] ORDERED, ADJUDGED AND DECREED that
no disposition be made.

 

This appeal timely
followed the trial court=s order of no disposition.

II.  Issues Presented








In his
first two issues, Craig contends the trial court erroneously excluded testimony
regarding Connie=s assaults on specific individuals and her reputation for
violence.  In a third issue, he challenges the factual sufficiency of the
evidence to support his conviction for assaulting Ann on January 23, 2004.[5]

III.  Analysis

A.        Exclusion of Evidence

We
review a trial court=s ruling on the admissibility of evidence for abuse of
discretion, considering the ruling in light of the evidence before the court at
the time.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).  A trial court does not abuse its discretion as long as its decision
lies within the zone of reasonable disagreement.  Id. 

1.         Exclusion of Testimony
that Connie Assaulted One of Craig=s Girlfriends

In his
first issue, Craig contends that the central theme of his defense was that
Connie was jealous of Craig=s relationships with several other girls and that, as a
result of that jealousy, Connie acted violently toward Craig or fabricated her
allegations of assault.  Craig complains that the trial court excluded the
testimony of the following witnesses concerning Connie=s alleged assault on AKate,@ another of Craig=s girlfriends.

a.         Testimony of Chuck

Teenager
C.J., identified here as AChuck,@ was asked why he had a bad relationship with the
complainant, Connie, and he responded

A:                    There was an incident with
[Connie] and my mother over the phone where she was cursing her out, and also
she beat up one of my friends, [Kate].  I witnessed that.

Defense:         You were present for that?








State:              Objection, your Honor; specific
acts, specific alleged acts from a very biased witness.

Court: Overruled.

Defense:         Did you witness that event?

A:                    Yes, sir.

Defense:         What happened?

State:              Objection, your
Honor, to any 404 evidence,[6] and it also
violates the Motion in Limine.  In fact, it goes directly to one of the most important
paragraphs in the Motion in Limine.

The jury
was then excused, and the State explained that the Aacts that they are talking about
related to an incident where [Connie] was adjudicated and placed on probation .
. . . [The State=s] motion in limine specifically refers to them not bringing
up any juvenile adjudications or anything related to any of that.@[7]  Defense counsel responded:

On cross-examination, of course, we have been over this.  They asked
[Chuck] what his relationship with [Connie] was, and he testified that it was
bad.  When I got him on redirect, I asked him why the relationship was bad. 
They objected and based upon the argument made, you overruled the objection. 
He then testified.








During that testimony he gaveCone
reason was that she beat up a friend of his, [Kate].  I askedCthen I saidCdid
sheCI think I said, ADid
she assault her,@ or something to that effect and they objected, and
you overruled the objection.  He answered, AYes.@  At that point I thought I was free to go on asking
the specifics.  If I=m mistaken, I apologize for that; but I thought the
objectionCoverruling the objection to him answering yes, he saw
her assault [Kate] seemed to me I could go ahead and ask additional questions. 
It=s already in the record.  He said that she assaultedChe saw her assault [Kate].  I mean that=s already before the jury.  You overruled their
objection on that, and you let that in. . . . 

. . . 

I=m not going to ask him if he knows if
she was adjudicated or anything like that.  I=m just after the facts, your Honor,
of what happened on that particular incident.

We
conclude the trial court did not abuse its discretion by sustaining the State=s objections.  A[I]t is not enough to tell the judge
that evidence is admissible.  The proponent, if he is the losing party on
appeal, must have told the judge why the evidence was admissible.@  Reyna v. State, 168 S.W.3d
173, 177 (Tex. Crim. App. 2005); see also Tex. R. App. P. 33.1(a)(1)(A) (requiring a timely request
that Astated the grounds for the ruling
that the complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context@).  Here, defense counsel simply
recounted the testimony and objections and explained why he believed the trial
court=s order on the State=s motion in limine no longer barred
this line of inquiry; however, he did not specify the purpose for which such
testimony was admissible.  His assertions on appeal that such testimony would
have supported an argument that Connie behaved violently toward Craig or
fabricated her allegations of assault were not presented to the trial court. 
Accordingly, this argument has been waived.  See Tex. R. App. P. 33.1(a)(1)(A).

b.         Testimony
of Todd








On
appeal, Craig states that he attempted to elicit testimony regarding the
assault on Kate through another witness, T.C. (ATodd@).  The State again objected and the
court sustained the objection.  In support of the admissibility of this
testimony, Craig cites to a portion of the record containing a conference with
the court outside the jury=s presence.  At that time, Craig=s defense counsel asked Ato present evidence of specific acts
of violence by [Connie] against third persons including [Kate], in the assault
that occurred between the alleged physical assaults and the alleged sexual
assault in this case and specific acts of violence against [Doug=s] family[8]
and [Craig=s] family.@  

Although
this conference occurred after Todd testified, Craig cites no evidence that 
Todd possessed any such knowledge.  Moreover, the trial court concluded, AAt this time your request is denied.
. . . We will carry it and see if you improve your situation or the basis for
it.@  Although Todd testified without
objection that he had seen Connie assault Craig, we have discovered no evidence
in the record that Todd witnessed Connie assault a third person.  We therefore
conclude that if the trial court excluded testimony from Todd regarding Connie=s assaultive conduct toward third
parties, this ruling does not constitute an abuse of discretion.  See Tex. R. Evid. 602 (AA witness may not testify to a matter
unless evidence is introduced sufficient to support a finding that the witness
has personal knowledge of the matter.@).

c.         Testimony of Jack

Another
teen, J.M.H. (AJack@), testified as follows:

Q:        Did you ever see [Connie] and [Craig] argue?

A:        Yes, all the time.

Q:        How frequent an occurrence was that?

A:        Every day.

Q:        Who initiated the arguments?

A:        [Connie].

Q:        Did the arguments ever become physical?

A:        Yes.

Q:        Who initiated the physical contact?

A:        [Connie].








Q:        Did [Connie] argue with other people?

A:        Yes.

Q:        Did she argue with other girls that [Craig] knew?

A:        Yes.

Craig=s defense attorney then initiated a
conference outside the jury=s presence, arguing:

The witness has testified he did observe [Connie]
arguing with other girls who were friends of [Craig]; and what I would like to
ask him in a general wayCI don=t want to get into specific instancesCbut I want to ask him if he ever
observed any of these arguments getting physical with other girls, but I won=t ask him about any specific
instances where she got physical.

The State responded:

Judge, I believe this is along the lines of what they wanted to ask
another witness yesterday, and we objected and I believe you sustained our
objection.  He wants to get into acts involving [Texas Rule of Evidence] 404,
acts covered in the Motion in Limine, and more specifically, these specific
acts of misconduct that have no relation to [Craig].

If [defense counsel] wants to ask
him, AOn December 9, 2003, did you see
[Connie] hitting [Craig],@ that=s one thing because we=re talking specifically about the
Respondent.  But in this case, they want to talk about other acts between
[Connie] and other girls, other collateral matters separate and apart from what
we are here for in this trial.  Those matters are not relevant and they violate
[Rule] 404.

The trial court sustained
the State=s objections. 

We agree
that, for the reasons advanced by the State, the trial court did not abuse its
discretion in excluding further testimony regarding whether Jack ever observed
Connie in a physical altercation with any other female known to Craig.  

d.         Testimony of Kate








Out of
the jury=s presence, defense counsel offered
testimony from K.G. (AKate@) that A[Connie] just like beat me up because I was writing [Craig] a
letter.@  According to Kate, this incident
occurred A[a]bout a year@ before the January 2006 trial.  Kate stated that Craig Awas in juvenile@ at that time and she believes he was
being detained in reference to this case.  Kate further testified that she and
Connie were in the same class, and Connie looked over at Kate=s desk and saw the letter Kate was
writing to Craig.  Kate stated that A[Connie] just said, >Why are you writing a letter to my
man,= and then like she just said that she
was going to get me after school and that=s it.@  Kate further testified that later
that day, Connie threw a rock at Kate=s car as Kate was driving through the
subdivision where both Connie and Craig lived.  According to Kate, she stopped
the car, and when she got out, Connie said nothing but grabbed her and punched
her in the head fifteen or twenty times.  Kate testified that she received a
concussion and filed a police complaint.

The
State objected to Kate=s testimony on the basis that it was speculative, and argued
that the evidence was offered to show that Connie=s assault of Kate was motivated by
jealousy.  The State further objected on the grounds that defense counsel did
not specify the basis for admission of this evidence, and the evidence did not
address Craig=s self-defense theory or any other defensive purpose; thus, the State
argued this testimony was not relevant.  In reply, Craig=s defense counsel argued: 

404(b) evidence is admissible to show motive; and I
think the assault on [Kate] shows motive on [Connie]=s part for either the aggressive acts
against her or to fabricate a false allegation of rape. . . . I think it=s highly relevant because [Connie]=s relationships with other girls is
what is drivingCat least from our perspective and our defenseC[Connie]=s actions in this case.  I think we
should be entitled to show specific acts against some of those individuals to
show that jealousy and to show that motive on [Connie] to do the things that
she has done.

The
trial court sustained the State=s objections.








Both at
trial and on appeal, Craig=s attorney argued that evidence of Connie=s assault of Kate is admissible, relying
on Torres v. State, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003).  There,
the Court of Criminal Appeals held, AWhen a defendant in a homicide
prosecution raises the issue of self-defense, he may introduce evidence of the
deceased=s violent character.  Specific acts
of violence may be introduced to demonstrate the reasonableness of the
defendant=s fear of danger or to demonstrate that the deceased was the first
aggressor.@  Id. (citations omitted).  But the Court continued, AThere must be some evidence of
aggression by the deceased during the events that gave rise to the criminal
charges in the case before the defendant may introduce evidence of a prior
specific violent act that tends to explain the deceased=s later conduct.@  Id. at 895 (emphasis added).

Torres is readily distinguishable.  First
and most obviously, Torres concerns the admissibility of evidence of the
deceased=s propensity for violence in a
homicide prosecution.  Unlike the present case, the deceased complainant in Torres
was necessarily unavailable to Aexplain [his] later conduct.@  Assuming, however, that the
reasoning in Torres applies in an assault caseCa matter on which we express no
opinionCKate dates her assault by Connie to
approximately January 2005, long after the offenses for which Craig was tried. 
Indeed, Kate testified that Craig was already in juvenile detention for these
very offenses at the time Connie allegedly assaulted her.  Although the Torres
Court permitted evidence of Aprior specific violent@ conduct by the complainant to
explain that individual=s conduct during the charged offense, Craig offered evidence
of subsequent extraneous acts of violence by Connie to contradict her
live testimony.  Under these circumstances, Torres does not support
Craig=s argument for admissibility.  

On the
record before us, we conclude the trial court did not abuse its discretion in
excluding this testimony.  See also Tex.
R. Evid. 608(b) (ASpecific instances of the conduct of a witness, for the
purpose of attacking or supporting the witness= credibility, other than conviction
of crime as provided in Rule 609, may not be inquired into on cross-examination
of the witness nor proved by extrinsic evidence.@).  We therefore overrule Craig=s first issue. 








2.         Exclusion
of Testimony Regarding Connie=s Reputation for Violence

Craig
also sought to introduce the testimony of a private investigator, Walter Grace,
regarding Connie=s reputation in the community for violent behavior.  The
State objected on the grounds that Ait=s not relevant, . . . it would
involve hearsay, and . . . it=s improper reputation evidence, [and] improper reputation
character evidence.@  The trial court sustained the objection.

Craig
contends that the Aheart of [his] defense was that [Connie] was violently
jealous of his relationship with other girls, and that she was the first
aggressor in her confrontations with him.@  In arguing that the exclusion of
the evidence discussed above caused him harm, Craig contends that, A[a]lthough there was plenty of
testimony that [Connie] was the first aggressor in many of her arguments with
[Craig],  there was a paucity of evidence regarding her actions towards other
girls.@  According to Craig, this latter
type of evidence was a Acentral pillar@ to his self-defense theory;
excluding this evidence undermined this defensive theory because Athe jury would have great difficulty
concluding that such jealousy could have caused [Connie] to be the first
aggressor.@

But as
Craig concedes, Athere was plenty of testimony@ from eyewitnesses that Connie was
the first aggressor in many of her arguments with Craig.  This evidence
includes a tape recording of a conversation between Connie and Craig in which
Connie repeatedly stated that she would testify in court that she hit Craig
first.  In contrast to Connie=s recorded statement and the statements of many eyewitnesses,
the excluded evidence consists of testimony that Connie assaulted another girl
long after these events and may have had a reputation for violent and jealous
behavior.  At best, this evidence does no more than create a basis from which a
jury could infer that Connie was the first aggressor, but this inference is
cumulative of the much stronger direct evidence already admitted.  








To place
the proffered evidence in context, several other witnesses testified regarding
Connie=s bad reputation and her reputed
jealousy and violence towards Craig.  For example, Connie=s former friend A.H. (AAndrea@) stated that people thought Connie
was a Aho,@ was Amean,@ and did Aevil@ things.  Andrea testified regarding
Connie=s jealousy of Craig, stating that
Connie Ajust did not like [Craig] hanging
with anybody else but her.@  She further agreed that Connie was possessive and had a
reputation for violence and jealousy.  Craig=s sister Ann testified that Connie Awas very violent.  She was very
violent, and she would argue . . . she screamed, throwed
(sic) tantrums, broke stuff, broke stuff at our house.@  According to Ann, Connie struck
Craig, pushed him, knocked him down, and hit him in the face when they argued
about other girls.  Another teen, Chuck, testified that Connie Adisliked@ Craig=s relationships with other girls and
this dislike was Avery intense.@  According to Chuck, Connie reacted to Craig=s other relationships with jealousy
and rage.  Another teen, Todd, testified that Connie made threats Aif [Craig] was talking to a girl or
something@ and would Ausually slap or hit@ Craig. 

In light
of the strength of the direct evidence, the exclusion of this tangential and
cumulative evidence was well within the trial court=s discretion.  Moreover, the availability
of much stronger direct evidence renders the exclusion of the contested
evidence harmless. 

For all
of these reasons, we overrule Craig=s first and second issues.

B.        Factual Sufficiency of
Evidence of Craig=s Assault of Ann








We
review adjudications of juvenile delinquency by applying the standards
applicable to sufficiency of the evidence challenges in criminal cases.  See
Tex. Fam. Code Ann. ' 54.03(f) (Vernon Supp. 2006). 
We determine factual sufficiency by reviewing the evidence in a neutral light. 
Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc)).  Evidence is
factually insufficient if (1) the evidence supporting the verdict is so
weak that the verdict seems clearly wrong and manifestly unjust, or
(2) the supporting evidence is outweighed by the great weight and preponderance
of the contrary evidence so as to render the verdict clearly wrong and
manifestly unjust.  Id. (citing Watson v. State, 204 S.W.3d 404,
414B15 (Tex. Crim. App. 2006)).

To
support a finding that Craig assaulted his sister Ann, the State was required
to prove beyond a reasonable doubt that he intentionally, knowingly, or
recklessly caused bodily injury[9] to Ann on
January 23, 2004 by hitting her with his hand.  ABodily injury@ consists of Aphysical pain, illness, or any
impairment of physical condition.@[10]  The broad definition of A>bodily injury=@ encompasses even relatively minor
physical contact as long as it constitutes more than mere offensive touching.@  Lane v. State, 763 S.W.2d
785, 786 (Tex. Crim. App. 1989) (en banc).

Craig
contends that the evidence he caused Ann bodily injury Ais outweighed by the evidence that
[Ann] was more concerned with documenting the claim for insurance purposes,
that [Craig] told the officer [Ann] had pushed him and he had hit her, and the
fact that [Ann] filed an affidavit of non-prosecution.@  At trial, Ann denied that her
brother caused the injury to her forehead, and testified as follows:

Q:        Are you telling this jury you don=t believe that it was caused by him?

A:        No.  We got into an altercation, and both of usChe didn=t
really hit me very much.  I was really hitting him.  The way that I got hit was
when he was reaching out to hit me, I hit him and hit my head and I was
reaching in to hit him.

Q:        You were reaching to hit him, but you accidentally hit your
head?








A:        No.  This is how it was.  Like we were here.  I=m here.  He=s
here.  And it was like this and he was hitting me; like he was reaching to me
to hit me to keep me from hitting him, and, you know, like that.

Q:        Okay.

A:        But it wasn=t really a big thing.

Ann further testified
that on December 17, 2004, she signed an Affidavit of Non-Prosecution, in which
she wrote Athe offense wasn=t as bad as I thought it was at the time.  Also, I understand
that the Defendant was acting in self-defense when he hit me.@

But
other factors undermined Ann=s live testimony.  First, the jury heard a tape recording of
the January 23, 2004 telephone call for emergency assistance.  During the call,
the emergency dispatcher asked Karen, the mother of both Ann and Craig, if
Craig had physically hurt his sister.  Karen responded in the affirmative.  She
also stated that her son Agoes off like this all the time and I don=t know what causes this but he does
this at least twice a week for no reason.@  Deputy Charles Johnson of the FBC
Sheriff=s Department testified  that Ann Asaid that she and her brother were
arguing while preparing lunch and he hit her.@  He further testified that Ann Ahad a bump on her head.@  According to Deputy Johnson, Craig
told him that Ann Ahad pushed him and he had hit her[,]@ and Ann indicated that A[Craig] hit her with his fist.@  In addition, Johnson testified that
Craig=s mother said she wanted her son Ato go to juvenile.@  








Moreover,
the jury heard testimony that Karen, who is a law school graduate, accompanied
Ann to the district attorney=s office to file the affidavit of non-prosecution.  The jury
could therefore have believed that Ann was acting on her mother=s instructions in filing the
affidavit.  Such an interpretation of events is supported by Karen=s conduct in the courtroom.  While
Ann was testifying, the State objected that the children=s mother was Asitting back there.  She=s been shaking her head back and
forth . . . and whispering some things.@  Ann responded, AYour Honor, my mother was speaking
to me, and I was just tryingC.@ (emphasis added).  Under these
circumstances, a reasonable jury could have concluded that Ann=s affidavit and live testimony were
given pursuant to the direction of their mother, and the jury could have found
the evidence of the statements made to emergency personnel on January 23, 2004
to be more persuasive.  

We
overrule Craig=s third issue.

IV.  Conclusion

On this
record, we conclude the trial court did not abuse its discretion by excluding
evidence that Connie assaulted a third party while this case was pending.  We
further conclude that the trial court did not abuse its discretion in excluding
the cumulative testimony of a private investigator that Connie had a reputation
for violence.  Finally, we hold the evidence is factually sufficient to support
the finding that Craig assaulted his sister on January 23, 2004.  Accordingly,
we overrule each of Craig=s three issues and affirm the judgment of the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed September 20, 2007.

Panel consists of Chief Justice
Hedges and Justices Hudson and Guzman. 









[1]  In an opinion from the appeal of a juvenile court
proceeding, neither the child nor his family shall be identified by name. Tex. Fam.Code Ann. ' 56.01(j) (Vernon 2002).  To protect the  privacy of
both the child and others who were minors when they testified, we will refer to
them by pseudonyms.





[2]  This excluded testimony is discussed in more detail
in our analysis of appellant=s first and
second issues, infra.





[3]  Our record does not reflect the outcome of this
incident, although it appears that a protective order was entered barring Craig
from living at home at some point.





[4]  Craig reached the age of eighteen during his
adjudication hearing, prior to disposition.  Section 51.0412 of the Juvenile
Justice Code provides for the retention of  a juvenile court=s jurisdiction if:  (1) the petition or motion was
filed while the respondent was under the age of eighteen; (2) the proceeding is
not complete before the respondent=s
eighteenth birthday; and (3) the court enters a finding that the prosecutor
exercised due diligence in an attempt to complete the proceeding before the
respondent reached the age of eighteen.  Tex.
Fam. Code Ann. ' 51.0412
(Vernon 2002).  These requirements were met in this case.





[5]  Although Craig argues that the evidence is factually
insufficient to support Athe January 24, 2004 assault conviction,@ it is clear from his briefing that he challenges his
conviction for assaulting his sister on January 23, 2004.





[6]  Texas Rule of Evidence 404 governs the admission of
character evidence and evidence of other crimes, wrongs, or acts.





[7]  The trial court granted the State=s pre-trial motion in limine requiring Craig, his
attorneys, and his witnesses to approach the bench before referring in any
manner to A[a]ny act of misconduct on the part of any witness for
the State of Texas, including the victim in this case, not amounting to a final
adult conviction for a felony or misdemeanor involving moral turpitude . . . @ and A[a]ny acts of
misconduct by the victim.@  The order on the motion in limine further prohibited
Craig, his attorneys, and his witnesses from referring in any manner to A[a]ny evidence concerning the reputation of the
alleged victim for not being peaceable and law[-]abiding, until such time as
the State of Texas has had the opportunity to test the qualifications of the
person offering such evidence . . . .@





[8]  At the time of these events, Doug lived across the
street from Connie.





[9]  See Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon Supp. 2006) (defining assault by
intentionally, knowingly, or recklessly causing bodily injury to another).





[10]  Id. '
1.07(a)(8).