

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00640-CR

William Boyd **PORTER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR4455
Honorable Jefferson Moore, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Karen Angelini, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: November 28, 2018

AFFIRMED

William Boyd Porter was convicted by a jury of murder. On appeal, Porter contends the trial court abused its discretion in excluding evidence of two extraneous, specific bad acts committed by the complainant. We affirm the trial court's judgment.

## BACKGROUND

Porter's daughter Brittany testified she met the complainant Trayvouns Edwards at a mall on December 21, 2015, and left the mall with him to smoke marijuana. Brittany accompanied Edwards to an apartment complex where he broke into a vacant apartment. Although Brittany

testified she initially engaged in consensual sex with Edwards, she then described how Edwards violently prevented her from leaving the apartment, beat her, and raped her. She also explained the reasons she remained with Edwards over the course of the next four days despite opportunities she had to inform others about Edwards preventing her from leaving. Over the course of those days, Brittany travelled with Edwards on public transportation and was introduced to Edwards's family and friends. She further described, however, the manner in which Edwards continued to beat and rape her. Brittany testified she finally convinced Edwards to allow her to use her cell phone on Christmas Day to phone her cousin. When she spoke with her cousin, she told him she was being beaten and held against her will. Brittany told her cousin to call Porter and have him track her cell phone and get her. On cross-examination, Brittany was questioned regarding the reasons she never told anyone she was being held hostage and about inconsistencies in her testimony and contradictions between her testimony and other evidence, including phone records showing texts and phone calls from her cell phone to Porter.

Porter testified he received a phone call on Christmas Day from another cousin Harold Coleman who informed him a man was beating Brittany and would not allow her to leave. Porter's wife began efforts to track Brittany's cell phone. Porter picked up Coleman and two other men to search for Brittany. Porter also picked up his gun from Coleman's home. Porter's wife was able to phone Porter with a location for Brittany's cell phone.

Eventually, Porter pulled up to a gas station where he saw Brittany walking with Edwards. Coleman approached Edwards from behind and asked if he was beating Brittany. Video from the gas station showed Coleman aggressively approaching Edwards who punched Coleman. As Brittany ran to Porter's truck, Edwards saw Porter approaching with a gun and tried to run away. Porter caught him and pushed him against a gas pump. With Porter's gun trained on his back,

Porter shot Edwards from behind as Edwards began walking back toward Porter's truck. Porter, Brittany, and the other men fled the scene. Edwards died at the scene.

When Porter was later brought to the police station for questioning several days later, he denied any involvement until he was shown still photographs obtained from the video of the incident. Porter told the interviewing detective he would return the following day to explain what had occurred; however, Porter never returned.

Porter was subsequently indicted for murder. At trial, Porter's defensive theory was defense of a third person, contending he shot Edwards to protect Brittany because Edwards made an aggressive movement toward Brittany while she was standing by Porter's truck.

During trial, defense counsel sought to introduce the testimony of two women. One woman would testify that in 2008, Edwards dragged her into a house, raped her, and would not allow her to leave. The other woman would testify that in 2012, Edwards beat her and prevented her from leaving an apartment for three days before she was able to run to the leasing office and call police. The trial court excluded the evidence.

The jury charge contained an instruction on defense of a third party. The jury rejected Porter's defensive theory and convicted him of murder. However, based on the jury's finding that Porter caused Edwards's death under the immediate influence of sudden passion arising from an adequate cause, the jury assessed the minimum sentence of fifteen years' imprisonment. The trial court sentenced Porter in accordance with the jury's verdict, and Porter appeals.

## STANDARD OF REVIEW

"We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex.

Crim. App. 2018). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Id*.

**DISCUSSION**

In his two issues on appeal, Porter contends the trial court abused its discretion in excluding the testimony of the two witnesses regarding the extraneous, specific bad acts committed by Edwards. Porter contends the evidence was admissible: (1) to rebut the State's contention that Brittany fabricated her testimony; and (2) to show Edwards was the first aggressor in support of Porter's defensive theory.

A.      General Law Regarding Admissibility of Other Crimes, Wrongs, or Acts

Under rule 404(b) of the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character." TEX. R. EVID. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. 404(b)(2). The list of permitted uses and exceptions in rule 404(b) is illustrative but not exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id*. "The proponent of uncharged misconduct evidence need not 'stuff' a given set of facts into one of the laundry-list exceptions set out in Rule 404(b), but he must be able to explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than 'bad character' or propensity purpose." *Id*.

B.      Admissibility of Evidence in Response to Brittany's Testimony

At trial, defense counsel argued the evidence of the extraneous, specific bad acts by Edwards was being offered "as essentially rebuttal" because the State in their cross-examination

"indicated to the jury that [Brittany] had fabricated her story." In support of this argument, defense counsel cited a case holding extraneous offense evidence is admissible to rebut a defensive theory of fabrication. *See Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). In response to this argument, the State asserted:

> Again, the victim is not on trial for whether or not he committed the sexual assault of Brittany. The defendant is on trial for murder. The only purpose of putting on the evidence that defense counsel is asking the Judge to allow is to make the jury hate the victim and nullify this jury in regards to this defendant's guilt in regards to the murder. They're trying to bolster Brittany's testimony, and that is not the reason that you can allow in specific acts of extraneous offenses.

In ruling the evidence was not admissible, the trial court reasoned:

> Here, I think the — the proffered evidence is of other crimes, wrongs, or acts of the decedent in this case. That's not — I don't think it's — I don't think it's probative. I think it's more prejudicial. I understand that you're offering it to — to show it more for the — to rebut the defensive — well, normally the defensive theory of fabrication or frame-up or retaliation. Now, it's the — the State's theory or something.
> But I think the other concern I have is — is that the defense is the one that put this witness on, and she wasn't consistent. So now it — the defense is saying that opens the door for us to put on all these other witnesses, and I don't think that's the intent of the law or the intent of the — the Rules. I mean, I think that would — I'm not saying that this defense team did this, but it could open up the door for — if I were to rule that way, it could open up the door for other defense teams to come in, put on a terrible witness to begin with, and then say, Judge, now it's opened the door because the State has done a good job of cross-examining our witness, and now we're going to put in all these other witnesses to bring in through a back door, I think, of 404(b) evidence.

In support of his assertion that the evidence was admissible to rebut the State's contention that Brittany fabricated her testimony, Porter cites numerous cases holding extraneous offense evidence is admissible to rebut a defensive theory that the complainant fabricated allegations against the defendant. *E.g.*, *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Bass*, 270 S.W.3d at 563; *De La Paz*, 279 S.W.3d at 346-47. In this case, however, Porter did not seek to introduce the evidence to rebut such a defensive theory. Instead, Porter sought to introduce the extraneous bad acts to bolster Brittany's testimony regarding the events occurring prior to the

murder because the State's cross-examination challenged Brittany's credibility regarding those events. Accordingly, the cases cited by Porter do not support his argument.

In addition, under the case law cited by Porter, "the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not be elicited by 'prompting or maneuvering' by the State." *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002). This is the law the trial court alluded to in its ruling, suggesting the defense cannot "back door" the admissibility of extraneous offense evidence by calling a witness whose credibility is subject to challenge and then seeking to use extraneous offense evidence to bolster the witness's credibility.

Fundamentally, however, the Texas Court of Criminal Appeals has recognized a distinction between a general attack on a witness's credibility, which does not allow for rebuttal with extraneous offense evidence, and a fabrication defense. *See De La Paz*, 279 S.W.3d at 346 n.32; *see also Banks v. State*, 494 S.W.3d 883, 893 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (noting in admitting extraneous offense evidence to rebut defensive theory of fabrication "[t]he court determined that by advancing these theories appellant went beyond attacking the complainant's credibility"); *Martinez v. State*, No. 03-14-00106-CR, 2016 WL 806718, at *3 n.5 (Tex. App.—Austin Feb. 24, 2016, no pet.) (not designated for publication) (recognizing distinction between attack on credibility and fabrication defense); *Moore v. State*, No. 04-12-00043-CR, 2013 WL 86592, at *2 (Tex. App.—San Antonio Jan. 9, 2013, pet. ref'd) (not designated for publication) (same). In the instant case, the State's cross-examination was a general attack on Brittany's credibility. Accordingly, the trial court did not abuse its discretion in

excluding the extraneous, bad acts under the arguments advanced in Porter's first issue, and Porter's first issue is overruled.[1]

### C.      First Aggressor

In his second issue, Porter contends the evidence of the extraneous, bad acts by Edwards was admissible to show Edwards was the first aggressor in support of Porter's defensive theory. At trial, defense counsel argued the evidence was admissible "because we've made a prima facie case of defense of third person and because Mr. Porter testified to an act of aggression by Mr. — by the decedent." In response, the State argued "any belief that [Edwards] was being aggressive is preposterous. He is walking. He is being ordered. It is very clear from the video. Just because the defendant gets on the stand and lies about what is — is happening, we can see with our own eyes what is happening on that video." The State further argued the evidence was so prejudicial the State could not get a fair trial if the evidence was admitted. After hearing the arguments, the trial court ruled the evidence was inadmissible, noting the video established the first aggression was by Coleman, Brittany's cousin who accompanied Porter to the scene.

When a defendant in a homicide prosecution raises the issue of defense of third person, he may introduce evidence of specific acts of violence by the deceased to demonstrate the deceased was the first aggressor. *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003). "However, such specific acts of violence are admissible only to the extent that they are relevant apart from showing character conformity." *Id*. In the context of proving the deceased was the first aggressor, "[t]here must be some evidence of aggression by the deceased during the events that gave rise to

---

[1] Even if the trial court erred in excluding the evidence under rule 404(b), it would not have abused its discretion in excluding the evidence under rule 403 because: (1) the evidence was not compelling in serving to make a fact of consequence more or less probable because the evidence related to events preceding the murder; (2) the evidence had the potential to improperly focus the jury on Edwards's bad character; (3) the evidence would distract the jury from consideration of the murder offense; and (4) the video was the best evidence of the actual events of consequence to Porter's assertion of defense of a third party. *See De La Paz*, 279 S.W.3d at 348-49 (listing factors trial court must consider in a rule 403 balancing test).

the criminal charges in the case before the defendant may introduce evidence of a prior specific violent act that tends to explain the deceased's later conduct." *Id*. at 895. "[T]he key is that the proffered evidence explains the deceased's conduct." *Torres v. State*, 71 S.W.3d 758, 762 (Tex. Crim. App. 2002). "As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant." *Id*.

In this case, the testimony by Porter and Brittany describing Edwards as aggressively moving toward Brittany is contradicted by the video of the incident which shows Edwards walking in the direction of Porter's truck only after Porter prevented Edwards from running away and while Porter was holding the gun and walking directly behind Edwards. Nevertheless, even if this testimony was some evidence of aggression, the evidence of the extraneous, bad acts Porter sought to have admitted did not explain Edwards's conduct. From the proffer and counter-proffer, the trial court could have believed the evidence would not have established that Edwards took any aggressive action toward the two women after someone had intervened and separated him from the women.[2] Because the key to the admissibility of the evidence is that it explain the deceased's conduct, and the trial court could have believed the evidence would not explain Edwards's conduct, the trial court did not abuse its discretion in excluding the evidence.[3] Porter's second issue is overruled.

---

[2] During defense counsel's proffer regarding the 2012 incident, he stated the witness would testify Edwards tried to push past the police to get at the witness; however, in its counter-proffer, the State contended the report of the responding officers stated Edwards was not present when they arrived but was taken into custody without incident when the witness pointed him out as they were about to drop her off. In the proffer regarding the 2008 incident, defense counsel never stated Edwards took any aggressive action after being separated from the witness.

[3] Even if the trial court erred in excluding the evidence, the trial court would not have abused its discretion in excluding the evidence under rule 403 because of its potential to confuse the issues. Furthermore, the exclusion of the evidence did not result in harm because the video of the incident allowed the jury to determine whether Edwards was the first aggressor. *See* TEX. R. APP. P. 44.2(b).

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice

DO NOT PUBLISH