

# NUMBER 13-11-00146-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**OMAR GARCIA VASQUEZ,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

## On appeal from the 389th District Court
## of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Garza**

Appellant, Omar Garcia Vasquez, was convicted of murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02 (West 2011). He was sentenced to 25 years' imprisonment and ordered to pay a $10,000 fine. On appeal, Vasquez challenges his conviction by six issues. We affirm.

### I. BACKGROUND

Maria Huerta testified that she was drinking with Debbie Alaniz, her roommate, at their home in Edinburg, Texas on the night of March 31, 2009. Eduardo Medellin, Alaniz's boyfriend, and Vasquez, Huerta's friend, came and left the home at various times during that evening. Huerta testified that, around midnight, she went outside and saw Medellin and Vasquez fighting. Huerta and Alaniz attempted to separate the men, but the men broke free and continued fighting. Huerta testified that the men fell to the ground and Medellin exclaimed, "Not like that, dude. Not like that." She only realized that Medellin had been stabbed when she saw that "he was gushing out blood." Alaniz testified that she saw Vasquez "punch" Medellin "somewhere on [his] side," causing Medellin to scream in pain. When she moved to another angle, Alaniz could see a knife in Vasquez's hand, and she could see Vasquez stabbing Medellin with the knife. Alaniz did not see Medellin holding the knife at any time.

After the assault, Medellin managed to stand up and began to run, while holding his side. Alaniz testified that she saw Vasquez running after Medellin with a knife in his hands. Vasquez eventually returned to the car he came in, which was being driven by his friend, Jamie Lee Guerra. At trial, Guerra testified that she did not see Vasquez stab Medellin with a knife, but she did see Vasquez chase after Medellin while holding a knife.

Medellin returned to the residence covered in blood. Huerta and Alaniz each testified that Medellin was bleeding profusely from a wound underneath his shirt. Huerta and Alaniz dragged Medellin to Alaniz's car in an attempt to take him to the hospital. They then called 911. Police arrived, and paramedics transported Medellin to a local hospital, where he was later pronounced dead.

At trial, forensic pathologist Norma Jean Farley, M.D., testified that she conducted an autopsy on Medellin's body and found that he had been stabbed six times: twice in the chest, once underneath the armpit, twice in the back, and once in the left hand. Dr. Farley opined that the stab wounds to the chest caused Medellin's death, and that the wounds were consistent with a knife blade measuring at least four to five inches. The knife that caused Medellin's injuries was never found.

Vasquez took the witness stand in his own defense and testified that he went to Huerta's residence in order to ask her about some prescription medication he suspected she had taken from him. According to Vasquez, Medellin became defensive and was the first aggressor, hitting Vasquez several times in the face. Vasquez stated that he grabbed Medellin's hand, twisted him, and put him in an "arm bar." He recalled punching Medellin in self-defense, but he did not recall stabbing him. Vasquez stated he did not have a knife with him that night, nor did he chase after Medellin with a knife.

Vasquez further testified that he is an Army veteran who served in Afghanistan and suffers from Post-Traumatic Stress Disorder ("PTSD"). He stated that the disorder causes him to suffer "flashbacks" and, in particular, caused him to be "hypervigilant" in response to Medellin's aggression on the night of March 31, 2009. A forensic psychiatrist, Robert E. Cantu, M.D., testified that Vasquez indeed suffers from severe PTSD as a result of his combat experiences in Afghanistan and that, when a veteran with PTSD is suddenly attacked, his reaction would be to automatically default to his military training and neutralize the threat.

Evidence was also admitted as to Vasquez's propensity for violence. Xavier Guzman testified that he was a passenger in a car that cut Vasquez off in traffic;

3

Vasquez responded by stepping out of his car and angrily threatening Guzman with a knife. Officer Gilberto Montezano of the Edinburg Police Department testified that, after he arrested a female shoplifter at an Edinburg Wal-Mart, Vasquez told the shoplifter "You're going to jail, bitch." Officer Montezano instructed Vasquez to "calm down and move along"; Vasquez then told the officer "You ass, don't talk to me like that. I've been to Iraq. I have PTSD. I don't give a fuck."

The jury found Vasquez guilty of murder and sentenced him to twenty-five years' imprisonment. This appeal followed.

## II. DISCUSSION

### A. Motions for Mistrial

Vasquez's first, second and fourth issues argue that the trial court erred in denying his motions for mistrial. We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

#### 1. Alleged *Brady* Violation

By his first issue, Vasquez claims that the trial court should have granted a mistrial because the State failed to inform defense counsel that Huerta had "changed her testimony." Vasquez argues specifically that Huerta's statement to police at the crime scene differed from her eventual trial testimony in a way that tended to benefit Vasquez.

Under the rule set forth by the United States Supreme Court in *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83,

87 (1963).  The Due Process Clause of the Fourteenth Amendment is violated when a prosecutor fails to disclose evidence which is favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).  But due process does not require the State to deliver its entire file to defense counsel; rather, it must only disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.  *United States v. Bagley*, 473 U.S. 667, 675 (1985).

We find this issue to be without merit.  Huerta testified on direct examination that she never actually saw the knife Vasquez apparently used to stab Medellin.  On cross-examination, Huerta was asked by defense counsel about her statement to police that "Omar pulled out a knife."  Subsequently, on re-direct examination, the prosecutor described the content of Huerta's police statement and was able to reconcile that statement with Huerta's trial testimony:

Q. [Prosecutor]   You told us today you didn't see the knife.

A. [Huerta]   I didn't.

Q.   Now, in your statement, you said, "Omar got a bloody nose.  Omar said that he just wanted to talk to Eduardo.  They went at each other again,"[1] and that's when Omar pulled out a knife and stabbed Eduardo.

A.   Yes.

Q.   Now, in your statement, it reads that Omar pulled out a knife and stabbed Eduardo.  Can you tell me where in here it says that, "I saw Omar pull out a knife and stabbed [sic] Eduardo."  Is that in here?

A.   No, it's not.

---

[1] The reporter's trial record contains a closing quotation mark here.  However, it is apparent that the remainder of the prosecutor's remark is also quoted from Huerta's statement to police.

5

Q. But you did indicate that that's when he pulled out a knife and stabbed him. How did you know that?

A. Because Eddie only fell to the floor hollering at him, (speaking Spanish).

Q. So did you ever tell [police] that you saw Omar with a knife?

A. No, I didn't.

The record reflects that, in her police statement, Huerta assumed that Medellin had been stabbed by a knife because of the relative positions of the men at the time of the assault and because of the nature and severity of the wounds suffered thereafter by Medellin. However, she never actually told police that she observed the knife itself. Her statement at trial that she did not see Vasquez with a knife was therefore not inconsistent with her police statement. In light of this fact, we cannot say the trial court abused its discretion by declining to grant a mistrial due to the prosecution's failure to disclose the substance of Huerta's testimony. Vasquez's first issue is overruled.

## 2. Comment on Decision to Remain Silent

By his second issue, Vasquez argues that a mistrial should have been granted because the State improperly commented on his decision to remain silent. The challenged remarks were made during the cross-examination of Oscar Lee Trevino, an Edinburg Police Department investigator, when the following colloquy occurred:

Q. [Defense counsel] A knife was used?

A. [Detective Trevino] That's correct.

Q. Somebody died?

A. That's correct.

6

Q. Okay. Did you do anything to determine where the knife came from?

A. That's where interviews come in. I interview, I try to get as much information as possible. I take a statement. There's not much more I can do than that. Now—

Q. Okay. So that's where the interviews come in, but—

A. Sure.

Q. —but the fallacy in your deduction on this particular case, and I'm sure you're a good investigator, is that you didn't do anything to check whether this stuff was true or not, right?

A. I was hoping that he would cooperate, and the other—Jamie Lee would cooperate—

At this point, defense counsel asked for a hearing outside the presence of the jury and requested a mistrial because of Investigator's Trevino's allusion to Vasquez's failure to "cooperate" with police. The trial court denied the mistrial but instructed the jury as follows:

> Ladies and gentlemen, the last comment made by the police officer, I'll just advise you, one, to—that will be stricken from the record and you are to disregard. The—everyone has a Fifth Amendment right. A defendant does not have to cooperate with police and they don't have to testify and you can't hold that against them.

It is undisputed that Investigator Trevino's remark was a comment on Vasquez's silence and was therefore inadmissible. *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) ("A comment on a defendant's post-arrest silence violates the Fifth Amendment prohibition against self-incrimination."); *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. However, this does not mean that a mistrial was necessarily warranted. "Only in extreme circumstances, where the prejudice is incurable, will a

7

mistrial be required." *Hawkins*, 135 S.W.3d at 77. An instruction to disregard will usually cure any harm arising from a witness's reference to a defendant's pre- or post-arrest silence; and we are required to presume that it did unless the facts of a particular case demonstrate otherwise. *See Waldo v. State*, 746 S.W.2d 750, 755-54 (Tex. Crim. App. 1988); *see also Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented.").

Vasquez argues that the trial court's instruction was inadequate because it "did not address the objectionable evidence," did not specifically advise the jury of Vasquez's right "to remain silent," and "only addressed [Vasquez's] failure to testify rather than any pre[-] or post-arrest silence." We disagree. The instruction clearly referenced "the last comment made by the police officer" and stated that "[a] defendant does not have to cooperate with police," implying that a defendant has the right not only to refuse to testify, but also to maintain pre- or post-arrest silence. Though the instruction did not use the word "silent," it sufficiently informed the jury that they were not to consider Investigator Trevino's remark and that defendants have the right to not "cooperate with police" and "you can't hold that against them." Under the facts of this case, we conclude that, in sustaining Vasquez's objection and instructing the jury as it did, the trial court sufficiently ameliorated any potential harm done by Investigator Trevino's comment. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). Vasquez's second issue is overruled.

### 3. Improper Closing Argument

By his fourth issue, Vasquez argues that the prosecutor made an improper statement in his closing argument and that a mistrial should have been granted on that basis. The specific statement by the prosecutor of which Vasquez complains is contained in the second paragraph of the following excerpt from the closing argument transcript:

> And you saw as I was cross-examining the defendant how—was there some anger in my voice? Yes. I have a job to do. I want to get to the truth of this case for the victim, Eduardo Medellin. Okay. And in doing so, sometimes emotions get involved.
>
> You saw the defendant get very upset too. His fist up in the air, his rear off the chair, rage in his eyes, you saw that. You were right here. I was right here. You saw it with me. But he chose to sit back down, control himself, act controlled. Anger again, because he's a hothead, very angry. If you weren't here and the deputies weren't here and the Judge wasn't here, he would have come after me.

At this point, defense counsel objected to the comment as highly prejudicial and inflammatory. The trial court instructed the prosecutor to "move along," the prosecutor agreed to do so, and the trial court instructed the jury to "[d]isregard that last statement." Defense counsel then asked for a mistrial and the trial court denied the request.

Proper jury argument falls into four well-defined categories: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to opposing counsel's argument; or (4) a plea for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). The prosecutor's description of Vasquez's demeanor during his own testimony was admissible as a summation of the evidence. *See Good v. State*, 723 S.W.2d 734, 736–37 (Tex. Crim. App. 1986) ("[A]ppellant's demeanor during his own testimony was properly in evidence by the mere fact that it was a part of his sworn testimony. We can presume that the jury had

9

an equal opportunity to observe his demeanor. Therefore, appellant's testimonial demeanor could be alluded to by the State in final argument on guilt."). Moreover, the prosecutor's description of Vasquez as "angry" and a "hothead" was a reasonable deduction from the evidence, including the testimony of Guzman and Officer Montezano, that Vasquez in the past had reacted angrily upon the merest provocation.

The prosecutor's remark that Vasquez "would have come after me" if the jury, deputies, and trial judge were not present in the courtroom, on the other hand, does not fall into any of the categories of permissible jury argument. The trial court therefore properly instructed the jury to disregard the statement. Vasquez nevertheless contends that the trial court's refusal to grant a mistrial deprived him of his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. V, VI, XIV.

However, even when a jury argument falls outside the permissible categories, "such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)). The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Id.* (citing *Cantu*, 939 S.W.2d at 633). In most instances, an instruction to disregard the remarks will cure the error. *Id.* (citing *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994)).

Considering the entire record, we do not find that the prosecutor's remark constituted a "willful and calculated effort" to deprive Vasquez of a fair trial, nor do we

find that the remark violated a mandatory statute or injected new facts harmful to Vasquez into the proceeding. It appears that the prosecutor made the remark in order to call attention to the fact that Vasquez became animated and angry while on the witness stand. The remark was certainly ill-advised, but it was not so "extreme" or "manifestly improper" as to have denied Vasquez a fair trial, especially considering the trial court's prompt instruction to disregard. We cannot say that the trial court abused its discretion in denying the motion for mistrial. Issue four is overruled.

## B. Evidentiary Rulings

By his third and sixth issues, Vasquez contends the trial court erred in excluding and admitting certain evidence. We review evidentiary rulings for abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Id.*

### 1. Evidence of Medellin's Violent Character

By his third issue, Vasquez argues that the trial court erroneously excluded evidence regarding Medellin's violent character. In particular, Vasquez proffered the following testimony outside the presence of the jury: (1) he once heard Medellin tell Huerta that he would "take care of" Huerta's husband and brother if they came to her residence looking for her; (2) on two or three occasions in the past, he saw Medellin and Alaniz "arguing," "throwing things around" and "yelling"; and (3) he knew that Medellin was a member of a prison gang that was "running fast, doing hits, robberies, pushing drugs to get up to a mafia status." The trial court sustained the State's objection to this testimony, noting that Vasquez was free to testify as to Medellin's violent character "in

11

opinion form or in reputation form if he knows it" but that he was not permitted, under the rules of evidence, to describe specific acts committed by Medellin in order to show his violent character.

Evidence of a person's character traits is generally not admissible for the purpose of proving action in conformity therewith on a particular occasion. TEX. R. EVID. 404(a). However, an exception to this general rule exists for "evidence of a pertinent character trait of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor . . . ." TEX. R. EVID. 404(a)(2). Thus, "[w]hen a defendant in a homicide prosecution raises the issue of self-defense, he may introduce evidence of the deceased's violent character." *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003). Such "proof may be made by testimony as to reputation or by testimony in the form of an opinion" and a witness offering such testimony "must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense." TEX. R. EVID. 405(a).

Additionally, specific acts of violence may be introduced to demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the deceased was the first aggressor. *Torres*, 117 S.W.3d at 894. However, such specific acts are admissible only to the extent that they are relevant apart from showing character conformity. *Id.* Specific violent acts are relevant apart from showing character conformity in the context of proving that the deceased was the first aggressor by demonstrating the deceased's intent, motive, or state of mind. *Id.* at 894–95.

12

Here, Vasquez argues that the proferred character evidence was relevant to show that Medellin was the first aggressor and that Vasquez's fear of danger was reasonable. We disagree. The fact that Medellin once told Huerta that he would "take care of" Huerta's husband and brother if they came looking for her, and the fact that Medellin and Alaniz engaged in frequent heated arguments, do not serve to demonstrate Medellin's intent, motive, or state of mind on the night of March 31, 2009. Vasquez's proferred testimony that Medellin was a member of a prison gang that was "running fast" and "doing hits" was similarly irrelevant other than to show Medellin's character conformity. The trial court did not abuse its discretion in excluding this testimony. Vasquez's third issue is overruled.

## 2. Evidence of Vasquez's Tendency to Carry a Knife

By his sixth issue, Vasquez claims that the trial court should have excluded evidence that Vasquez was known to carry a knife. Specifically, upon being recalled to the witness stand, Huerta proferred testimony outside the presence of the jury that Vasquez "used to carry his army knife" "all the time." The trial court overruled defense counsel's objection to the testimony as inadmissible under Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

We need not rule on the merits of the trial court's ruling because any error was rendered harmless by the admission of the same testimony elsewhere without

13

objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *see also* TEX. R. APP. P. 44.2. In particular, Huerta previously testified on cross-examination that she has "seen [Vasquez's] knife" and that, on the night of March 31, 2009, "he showed me his bad ass army knife." Moreover, Guerra testified that Vasquez bought and sold knives and had previously shown her a knife; Vasquez's sister testified that Vasquez used to carry a knife after he first came back from the Army; and Guzman testified that Vasquez, after being cut off in traffic, got out of his car and threatened him with a knife measuring six or seven inches long. Because the substantial equivalent of Huerta's testimony was admitted elsewhere without objection, we overrule Vasquez's sixth issue.

**C     Comments by Trial Judge**

By his fifth issue, Vasquez contends that his conviction must be reversed because the trial judge violated his right to a fair trial by "improperly comment[ing] on the credibility of the defendant and the defensive theory." Article 38.05 of the Texas Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). Comments by the trial judge constitute reversible error if they are "reasonably calculated to prejudice the defendant's

14

rights." *Blue v. State*, 41 S.W.3d 129, 134 (Tex. Crim. App. 2000) (citing *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983)).

Vasquez complains specifically of three different comments made by the trial judge. The first comment occurred after the prosecutor asked Vasquez whether he recalled causing puncture wounds to Medellin's chest. Vasquez replied: "I remember punching him. If there was a knife involved, it was from his hands." At that point, the prosecutor interrupted Vasquez and began to ask his question again. Defense counsel objected to the interruption and asked that Vasquez be permitted to "finish his response before he is cut off." The trial court then stated: "[Defense counsel], he needs to answer the question asked, not a response that he wants to give." This was not a calculated attempt to prejudice Vasquez's rights, but rather an explanation of the law with regard to nonresponsive witnesses. *See Hobbs v. State*, 650 S.W.2d 449, 453 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) ("Unresponsive comments by witnesses have no place in the courtroom and tend to militate against an atmosphere which is favorable to a fair trial for an accused.") (citing *Cavender v. State*, 547 S.W.2d 601, 604 (Tex. Crim. App. 1977)).

The second comment complained of by Vasquez occurred after a particularly heated exchange during the prosecutor's cross-examination of Vasquez:

THE COURT: Excuse me. Whoa. I will advise both individuals.

[Prosecutor], you ask a question, allow Mr. Vasquez to answer.

And, Mr. Vasquez, you will ask [sic] the question and you will answer it. This is not an argument.

THE WITNESS: Yes, ma'am.

15

THE COURT: This is not a conversation.

THE WITNESS: All right.

THE COURT: You're not even listening to me, Mr. Vasquez.

THE WITNESS: Yes, ma'am.

THE COURT: Wait until I give you the instructions and you must wait until he answers the—asks the question and you will answer the question. The court reporter cannot take two voices at a time. Do you understand that, Mr. Vasquez?

THE WITNESS: Okay, ma'am. So are you saying that I wait for you to tell me to answer?

THE COURT: No, sir, I'm not telling you to wait for me to tell you to do something. I'm waiting—I'm telling you to please wait until he asks the question, then answer the question asked.

THE WITNESS: May he slow down, ma'am?

THE COURT: He can ask the questions as he sees fit. If you don't understand the question, tell him.

THE WITNESS: Okay, ma'am.

The trial court's remark that Vasquez was "not even listening" to her was not calculated to prejudice his rights, nor does it constitute a comment on the weight of the evidence or convey the trial judge's opinion of the case. Instead, the trial judge was acting within her authority in admonishing Vasquez to listen to her instructions. *See, e.g., Gonzales v. State*, 2 S.W.3d 600, 607 (Tex. App.—Texarkana 1999, pet. ref'd) (noting that "the trial judge has the inherent power to control the orderly proceedings in the courtroom . . .").

Finally, Vasquez complains by this issue that the trial court improperly commented on his defensive theory by sustaining the prosecutor's objection to

16

comments made during defense counsel's closing statement. Specifically, defense counsel stated that "[Medellin] attacked [Vasquez] again and pulled out a knife . . . ." The prosecutor objected, claiming that the remark was a misstatement of the evidence. The trial court agreed and sustained the objection. This was not a comment on the weight of the evidence or an opinion on Vasquez's defensive theory; rather, it was a ruling on a timely-raised objection to improper argument.[2]

Having found no violations of article 38.05 of the code of criminal procedure, we overrule Vasquez's fifth issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
27th day of August, 2012.

---

[2] Vasquez does not argue that the trial court erred in sustaining the State's objection; he argues only that the ruling constituted an improper remark under article 38.05 of the code of criminal procedure. In any event, Vasquez does not direct this Court to any evidence in the record establishing that Medellin "pulled out a knife" to attack Vasquez, as his counsel suggested. The ruling was therefore not erroneous.

17