# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00620-CR

**Henry Gonzales, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. D-1-DC-12-904023, HONORABLE KAREN R. SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant was convicted of murder and sentenced to life imprisonment. He appeals his conviction in seven points. We will affirm the trial court's judgment.

## FACTUAL BACKGROUND

Appellant was charged with murder after Mary Rivas was found deceased on the porch of her boyfriend's home. At trial, the medical examiner testified that Rivas had been killed in an assault by intentionally inflicted stab wounds. Rivas's boyfriend, Ruben Gonzales (appellant's brother), testified that he had been staying at the hospital during the time frame in question and that Rivas had called him at the hospital from his home phone the night before her body was found. Ruben testified that during the phone call, he could hear appellant's voice in the background, demanding to talk to him. He further testified that at one point during the phone call he heard Rivas say "mother fu—," but that before she finished the curse word, the call was abruptly disconnected.

Ruben testified that this was the last contact he had with his girlfriend before his daughter found Rivas's deceased bloody body on the porch the following day. No other witnesses testified to the events of that evening.

Appellant did not testify at trial, but in a video recording that was shown to the jury, he admitted to police detectives during a custodial interrogation that he had been drinking and smoking crack at Ruben's house with Rivas on the night in question and that, although he did not remember stabbing her, he did remember standing over her bloody body at some point after he and the deceased had an argument. Evidence showed that appellant sustained two cuts on the fingers of his left hand during the evening in question and that drops of his blood were found throughout the living room and kitchen of Ruben's house as well as progressing along several blocks of sidewalk and ceasing at a water faucet outside a gas station. A bloody six-inch knife was found behind a dumpster near the gas station, and DNA testing confirmed that the blood on the knife belonged to both the deceased and appellant.

**DISCUSSION**

Appellant's first issue asserts that the trial court erred in prohibiting defense counsel from asking the following question during voir dire: "You're convinced that it is more likely than not that [the defendant] did commit the murder, but you are not convinced beyond a reasonable doubt. If you found yourself in that situation, could you follow the law and acquit the person on trial?" The State objected that this was an improper commitment question, to which the trial court responded that it would allow proper questions such as, "Will you hold the State to its standard of beyond a reasonable doubt?" and "Do you have a problem with that standard in that circumstance?"

2

Appellant explained that the question he sought to ask was "Whether [the venire] can follow the law and acquit if they are not convinced beyond a reasonable doubt of this man's guilt?" Appellant then inquired whether the trial court was instructing him that he was not permitted to ask that question, to which the trial court replied, "Yes." Defense counsel then asked a rephrased question about reasonable doubt, to which the State did not object.

Both the State and appellant agree that appellant sought to ask a commitment question, and we concur. *See Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001) (commitment question binds prospective juror to verdict or asks prospective juror to refrain from resolving issue, based on one or more facts contained in question). The point of contention is whether the commitment question was proper. *Id.* at 181-82. We conclude that the question was proper because it sought to determine whether the venire members could follow the law by committing to an acquittal if they were not convinced beyond a reasonable doubt of appellant's guilt and because it did not include any additional facts beyond those required for this legal requirement. *See id.*; *Caton v. State*, 66 Tex. Crim. 473, 475 (1912) (holding as proper questions substantively same as question here); *see also Fuller v. State*, 363 S.W.3d 583, 588 n.28 (Tex. Crim. App. 2012) (prospective juror would be challengeable for cause if she equated proof beyond reasonable doubt with preponderance of evidence or clear and convincing evidence). Accordingly, the trial court abused its discretion in prohibiting defense counsel from asking the question. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996). Having determined that the trial court erred, we must conduct a harm analysis. *See* Tex. R. App. P. 44.2.

3

While defense counsel was prohibited from phrasing his preferred query in one particular way, he was not entirely precluded from discussing and explaining the beyond-a-reasonable-doubt standard. Therefore, we will review the harm under the non-constitutional-harm analysis, as the limitation that the trial court placed on defense counsel's preferred voir dire was not "so substantial" as to rise to the level of constitutional error. *Easley v. State*, 424 S.W.3d 535, 541-42 (Tex. Crim. App. 2014) (where defense counsel was not foreclosed from explaining concept of "beyond a reasonable doubt," error was non-constitutional); *Woods v. State*, 152 S.W.3d 105, 109 (Tex. Crim. App. 2004) (denial of proper question in voir dire assessed as non-constitutional error). Accordingly, we will consider whether appellant's substantial rights were affected thereby and disregard the error if they were not. Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (substantial right is affected when error has substantial and injurious effect or influence in determining jury's verdict).

Besides the fact that appellant was allowed to elicit the same general information as that likely to be gleaned from his preferred question, the jury was instructed in the charge that "[t]he prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant" and that "[i]n the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant." This charge properly instructed the jury on the burden of proof beyond a reasonable doubt and the circumstances under which they must acquit appellant. Furthermore, this instruction contained substantively the same information as that included in appellant's preferred voir-dire question.

4

Absent evidence to the contrary, which we do not have, we presume the jury followed the trial court's instructions. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). On this record and in light of this presumption, we conclude that the voir-dire error did not have a substantial and injurious influence on the jury's verdict because the jury was charged with the very same duty appellant earlier sought to address in voir dire.

Additionally, the evidence of guilt was overwhelming, considering the physical and DNA evidence; the testimony of Ruben, the medical examiner, and the detectives; and appellant's own statements during his custodial interview. In light of the evidence, the voir-dire error would have had little, if any, influence on the jury's deliberations.

Finally, we note that in closing argument, defense counsel revisited the State's burden of proof and his preferred presentation of that topic by submitting to the jury that the State had "proven that [the defendant] *probably* did kill [the deceased], but [it] didn't prove beyond a reasonable doubt that he did." (Emphasis added.) Furthermore, the jury charge specifically ordered the jury that its verdict must be unanimous and must reflect the individual verdict of each juror rather than a "mere acquiescence in the conclusion of the other jurors." When viewed in context of the overwhelming evidence of appellant's guilt, the trial court's jury instructions, and appellant's ability to generally pursue the issue of reasonable doubt during voir dire, we conclude that the trial court's error in prohibiting defense counsel from asking his one preferred voir-dire question did not have a substantial and injurious influence in determining the jury's verdict. Accordingly, we overrule appellant's first issue.

5

We next address appellant's complaint that the trial court erred in denying his request for a self-defense instruction in the jury charge.[1] *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (defendant is entitled to instruction on self-defense if issue is raised by evidence). The State responds, as it did at trial, that there was no evidence on the essential element of the offense requiring that the victim be the first aggressor.[2] *See* Tex. Penal Code §§ 9.31, .32. Based on our review of the record, we agree.

The only evidence to which appellant points as allegedly raising the defense is (1) two cuts he sustained on the fingers of his left hand during the time of the offense and (2) an argument he allegedly had with the victim.[3] Although appellant argues on appeal that the cuts were defensive wounds, sustained in response to the victim's first aggressive act towards him with the knife that caused her death, there is nothing in the record to support such an inference. As the trial court correctly concluded, the cuts on appellant's hand, without more, were insufficient as a matter of law to raise the element of self-defense requiring the victim to have been the first aggressor. *See Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007) ("raised by the

---

[1] This is appellant's sixth issue, but for the sake of brevity, we address his points out of order. *See* Tex. R. App. P. 47.1, 47.4.

[2] The State also argues that appellant did not admit the underlying acts, another requirement for a self-defense instruction. *See VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex. App.—Austin 2005, no pet.). We need not reach this argument because of our determination of the self-defense issue on the basis of first aggression.

[3] As appellant did not testify at trial, evidence of the argument to which he refers arose only in the context of his statements to police officers during the videotaped custodial interrogation after his arrest. It is not a requirement that a defendant testify to raise the issue of self-defense, but there must nonetheless be evidence that he believed himself to be in danger *and* of an attack or apparent attack by the victim. *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984).

6

evidence" means there is some evidence on each element of defense that, if believed by jury, would support rational inference that element is true). The argument appellant allegedly had with the victim is also insufficient, without more, to raise the defense, as an argument does not equate with an act or attempted act of violence.

Appellant's contention that he acted in self-defense against the victim's initial aggression relies on mere speculation rather than reasonable inferences that the jury could have made from the admitted evidence. *See Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) ("Speculation . . . about the possible meaning of facts and evidence . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."). The trial court did not err in ruling that the evidence did not raise the issue of self-defense and in not giving an instruction accordingly. *See Shaw*, 243 S.W.3d at 657-58. We overrule appellant's sixth issue.

Appellant's fourth issue asserts that the trial court erred in excluding evidence of the victim's criminal history allegedly demonstrating her character for violence, specifically evidence that she had previously threatened an Austin peace officer with a knife when he arrested her for prostitution and for which she was convicted of assault eleven years prior to her murder. However, while evidence of a pertinent character trait of the victim of a crime offered by the defendant is admissible, such evidence must generally be in the form of opinion or reputation testimony. *See* Tex. R. Evid. 404(a)(2); *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the victim to show action in conformity therewith. Tex. R. Evid. 404(b).

7

Specific acts of violence may be admissible to show that the victim was the first aggressor but only to the extent that the acts are relevant apart from showing action in conformity with such character, for instance to prove the victim's specific intent, motive, or state of mind with respect to the offense for which the defendant is being tried. *Torres*, 71 S.W.3d at 760. However, in the context of a defendant's intent to prove that the deceased was the first aggressor, in order to introduce evidence of a specific, violent act, there must *first* be some evidence of a violent or aggressive act by the deceased that tends to raise the issue of self-defense and that the specific act may explain. *Id.* at 761; *see also Torres v. State*, 117 S.W.3d 891, 895 (Tex. Crim. App. 2003) (before defendant may introduce evidence of prior specific act that tends to explain decedent's later conduct, there must be some evidence of aggression by deceased during events that gave rise to criminal charges in case).

Thus, for the victim's criminal history to have been admissible in this case, there must have first been some evidence of her aggression that raised the issue of self-defense. As already discussed, there was not. Therefore, evidence of the victim's criminal history was not admissible, and the trial court did not abuse its discretion in excluding it. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (trial court's ruling on evidentiary matter is reviewed for abuse of discretion, which does not occur if ruling is within zone of reasonable disagreement). We overrule appellant's fourth issue.

In his fifth issue, appellant argues that the trial court abused its discretion in denying his motion for continuance so that he could procure the attendance of an allegedly material witness—the peace officer whom the deceased had threatened with a knife eleven years prior. *See*

8

*Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006) (granting or denying continuance is within sound discretion of trial court); *see also* Tex. Code Crim. Proc. art. 29.13 (trial court may grant continuance "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had").

After reviewing the entire record, we conclude that appellant has not demonstrated that he was actually prejudiced by the trial court's denial of his motion for continuance. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). As already discussed, the peace officer's testimony about the assault committed by the victim would not have been admissible. Additionally, in his motion for new trial, appellant did not raise the issue of the trial court's denial of his motion for continuance and offered no affidavit from the peace officer indicating what his testimony would have been. *See* Tex. R. App. P. 21.2 (motion for new trial is prerequisite for issue on appeal when necessary to adduce facts not in record); *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.) (motion for new trial alleging facts outside record without supporting affidavits is fatally defective). A motion for new trial is ordinarily the means by which to make a showing of prejudice, *Gonzales v. State,* 304 S.W.3d 838, 843 (Tex. Crim. App. 2010), and even if the peace officer's testimony would have been admissible, appellant made no showing as to what the additional evidence would have demonstrated from which we could evaluate whether he was prejudiced. We overrule appellant's fifth issue.

Appellant's second issue complains that his rights to due process and to counsel were violated by virtue of the State's alleged withholding of exculpatory evidence prior to trial. *See*

9

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, appellant complains that the State withheld evidence of the deceased's criminal record, not disclosing it until the penultimate day of trial, despite his prior requests for exculpatory evidence and despite the court's granting of his motion for disclosure of exculpatory evidence. However, to find reversible error under *Brady*, the appellant must show that the evidence central to the *Brady* claim would have been admissible, besides making other required showings; the State does not have a duty to disclose material evidence favorable to the defense if it would be inadmissible. *See Pena v. State*, 353 S.W.3d 797, 809, 814 (Tex. Crim. App. 2011). Because, as discussed above, the evidence of the victim's prior criminal acts was not admissible, there was no reversible *Brady* error.[4] Accordingly, we overrule appellant's second issue.

In his third issue, appellant argues that the trial court erred in denying his request for a limiting instruction regarding out-of-court statements made by two homicide detectives during their custodial interrogation of him. At trial, appellant objected on the basis of hearsay to all of the declaratory statements made by the detectives and published to the jury in the form of the video recording of his interrogation.[5] Appellant argues that the detectives' statements were inadmissible hearsay, and to the extent that they were admissible for a purpose other than the truth of the matters asserted, the trial court was required to instruct the jury about the limited scope of the evidence due

---

[4] Because the issue of the inadmissibility of the victim's criminal record is dispositive, we do not reach appellant's additional allegation that the State in fact withheld the evidence.

[5] Representative of the objected-to statements was the following, made by Detective White:

> I mean, I mean when y'all were fighting, when, when you and [the deceased] were having the argument, and get—and when, when things were starting to get heated. You said that you were hitting it [i.e., smoking the crack pipe] and you went—you lost control and then the next thing you knew you were standing over her.

to his request for such instruction. *See* Tex. R. Evid. 105(a) (when evidence that is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, court shall restrict evidence to proper scope and instruct jury accordingly), 802 (hearsay is not admissible except as provided by statute or rules).

The record reflects that twice the State represented to the trial court that it was offering the challenged evidence for the truth of the matters asserted. We conclude that the detectives' videotaped statements were inadmissible as hearsay unless an exception applied. *See id.* R. 801 (hearsay is statement, other than one made by declarant while testifying at trial, offered to prove truth of matter asserted), 802 (hearsay is not admissible except as provided by statute or rules). Neither at trial nor on appeal has the State identified any applicable hearsay exception. Accordingly, we hold that the trial court abused its discretion in admitting the detectives' statements for all purposes, including for the truth of the matters asserted to by the detectives, instead of admitting them with an appropriate limiting instruction as appellant requested. *See id.* R. 105(a).

Having determined that the trial court erred in failing to give a limiting instruction, we must consider whether appellant's substantial rights were affected. *Jones v. State*, 119 S.W.3d 412, 424-25 (Tex. App.—Fort Worth 2003, no pet.) (failure to give limiting instruction is non-constitutional error); *see also* Tex. R. App. P. 44.2(b) (review of non-constitutional errors); *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (court's failure to give rule 105(a) limiting instruction is reviewed for harmless error).

Having examined the record as a whole, we have fair assurance that this error did not influence the jury or had but a slight effect. *See Routier v. State*, 112 S.W.3d 554, 577 (Tex.

Crim. App. 2003); *see also Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002) (in determining whether substantial rights were affected, appellate court should consider testimony and physical evidence, nature of evidence, character of alleged error, and overwhelming evidence of guilt). Most of the detectives' statements were paraphrases of appellant's own properly admitted statements that he made during the custodial interview and therefore were cumulative of that evidence. Furthermore, the statements would likely have been understood by a reasonable juror to have been relevant for a purpose other than for their truth (as the detectives did not witness the murder), such as to glean information from appellant as an investigative technique. The remaining statements by the detectives were paraphrases of statements allegedly made by Ruben during Detective White's interview with him at the hospital and were cumulative of facts contained in Ruben's trial testimony and in phone records admitted at trial. Also, both detectives and Ruben were available for cross-examination at trial.

Moreover, as already discussed, there was overwhelming evidence of appellant's guilt in the form of DNA and physical evidence, including the bloody knife containing appellant's and the victim's DNA and evidence that appellant was with the deceased at the time of the offense. After examining the entire record, we conclude that appellant's substantial rights were not affected by the trial court's error in failing to give the jury a limiting instruction about the detectives' videotaped statements, and we accordingly overrule his third issue.

Finally, appellant's seventh issue asserts that the trial court made multiple errors throughout the trial proceedings that, viewed together, cumulatively resulted in depriving him of a fair trial. Although a number of errors may be found harmful in their cumulative effect,

12

*Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), the "cumulative error doctrine provides relief only when constitutional errors so 'fatally infect the trial' that they violated the trial's fundamental fairness,'" *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004).

Besides the six issues already addressed, appellant cites an additional nineteen alleged errors within this seventh issue. We have previously cautioned parties bringing cumulative-harm claims to brief each alleged error separately before discussing their cumulative effect, with appropriate citations to the record and relevant legal authority; otherwise, the party runs the risk of having the claim dismissed as multifarious. *Walls v. State*, No. 03-12-00055-CR, 2014 WL 1208017, at *5 n.2 (Tex. App.—Austin Mar. 20, 2014, no pet.) (mem. op., not designated for publication); *see also Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (concluding that single point of error asserting constitutional and statutory claims was multifarious). However, we regard appellant's true issue here to be that the trial court exhibited an improper bias or prejudice against him, depriving him of a fair trial, rather than that the cumulative effect of these multiple alleged "errors" sufficiently raised the harm level to one warranting a reversal. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Therefore, we consider whether the trial court's conduct, as reflected in the record as a whole, rises to a level displaying "deep-seated favoritism or antagonism." *See Liteky v. United States*, 510 U.S. 540, 554 (1994) (judicial remarks during course of trial that are critical, disapproving, or even hostile to counsel, parties, or their cases, ordinarily do not support bias or partiality challenge). Having viewed the record in its entirety, we conclude that the trial court's conduct—in the form of appellant's cited twenty-plus "errors" and the trial court's verbal remarks made throughout trial—do not rise to such a level. Accordingly, we overrule appellant's seventh issue.

13

## CONCLUSION

For the foregoing reasons, we overrule each of appellant's issues and affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   December 4, 2014

Do Not Publish