**Affirmed and Majority and Concurring Opinions filed February 13, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00356-CR

---

### CLIFFORD WAYNE LAWS JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1683281**

---

## M A J O R I T Y   O P I N I O N

Appellant Clifford Wayne Laws Jr. appeals his conviction for first-degree murder. Appellant presents three issues. First, he argues that his trial counsel was constitutionally ineffective. Second, he argues that the lack of a reporter's record during the time period in which to file a motion for new trial deprived him of his due process and equal protection rights. Third, he requests us to abate the appeal so the trial court may enter findings of facts and conclusions of law regarding the voluntariness of his statement to police. We have already granted appellant the

relief sought in his third issue, and we overrule his remaining issues. Accordingly, we affirm.

## Background

Appellant does not challenge the sufficiency of the evidence supporting the jury's verdict, so we briefly summarize the facts. Appellant was in a dating relationship with Precious McGowan. Appellant and Precious lived in the same house with Precious's father, Joseph, and Precious's grandmother, Rose. While at home one day, appellant and Precious had a physical altercation, which Precious described as a "tussle." Joseph intervened, resulting in a fight between Joseph and appellant. Precious screamed for them to stop. Appellant owned a twenty-two-caliber rifle, which he used to shoot Joseph eighteen times, including six shots to the back of Joseph's head and neck. Joseph died as a result of the shooting.

The State indicted appellant on a first-degree murder charge. Appellant pleaded not guilty, and the case went to trial. At trial, appellant's main theory was that he acted in self-defense because Joseph threatened him with a knife. Precious denied ever seeing her father holding a knife during the altercation. The jury heard evidence supporting appellant's self-defense theory, and the court presented the theory to the jury in the charge.

The jury found appellant guilty of murder, and the trial court sentenced appellant to fifty years' confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant timely appealed.

## Analysis

### A. Assistance of Counsel

In his first issue, appellant argues that his counsel provided ineffective assistance.

2

1.    Standard of review

We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). A criminal defendant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense. *Id.* at 691-92. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *Id.* at 697.

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g). If counsel's reasons for his or her conduct do not appear in the record and there exists at least the possibility that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *See Garza*, 213 S.W.3d at 348. If, as here, counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the majority of cases,

the record on direct appeal is simply undeveloped and insufficient to permit a reviewing court to fairly evaluate the merits of an ineffective assistance of counsel claim. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Robison*, 461 S.W.3d at 203.

2.    Discussion

Appellant argues that his trial counsel was ineffective because he failed to investigate the laws and facts necessary to present a self-defense claim. Appellant does not dispute that his trial counsel presented evidence and argument in support of appellant's self-defense theory, which was presented to the jury. He contends, however, that trial counsel was ineffective because he agreed during the motion in limine hearing that evidence of specific prior bad acts by the victim, Joseph, were inadmissible to prove that Joseph was the first aggressor.

Prior to trial, the State sent appellant a *Brady* notice disclosing that Joseph's criminal history included the following violent alleged offenses or convictions:

- a 2018 charge of aggravated assault with a deadly weapon, which was dismissed;
- a 2018 charge of terroristic threat, which was dismissed;
- a 2008 charge of aggravated assault with a deadly weapon, which was dismissed;
- a 2001 charge of felon in possession of a weapon, to which Joseph pleaded guilty and was sentenced to two years in prison;
- a 1996 charge of discharge of a firearm in a metro area, to which Joseph pleaded guilty and was sentenced to 90 days in jail; and
- a 1991 charge of aggravated robbery — serious bodily injury, of which Joseph was convicted and sentenced to five years in prison.

According to appellant, his trial counsel's agreement before trial that these specific acts of misconduct were inadmissible constituted ineffective assistance because:

4

[n]o reasonable strategic reason can exists [sic] that would justify trial counsel's agreement that specific acts of misconduct including aggravated assaults with a deadly weapon, terroristic threats, felon in possession of a firearm, discharge of a firearm in a metro area and aggravated robbery were not relevant and admissible to show that [Joseph] was the first aggressor and justify a not guilty verdict.

We first observe that appellant's premise—his trial counsel stipulated that Joseph's prior bad acts were inadmissible—is not supported by the record. Trial counsel agreed merely to the State's motion in limine, which asked that counsel approach and obtain a ruling on admissibility as to extraneous offenses or bad acts involving Joseph before referencing them to the jury.[1] The record reveals the following exchange:

> MS. HUTSON: With No. 2, extraneous offenses, or bad acts involving the complainant, Joseph McGowan. Any reference to, suggestion of, or production of such documentation has no relevance as to the case at bar and would be misleading to the jury. Any such instance that has not resulted in a final conviction or a valid impeachable final conviction is inadmissible under 608, 609, 403, and 404(a). I believe that one is agreed.
>
> MR. GREENLEE: Well, with one caveat.
>
> THE COURT: Okay.
>
> MR. GREENLEE: I think two issues, possibly, Your Honor. One, if something other than Mr. McGowan's character comes into evidence, then that would allow us to change this.
>
> THE COURT: Right.
>
> MR. GREENLEE: And then two, should the defendant choose to testify, I think he would still be allowed to testify as to bad acts

---

[1] The State's motion in limine number 2 stated: "Extraneous offenses or bad acts involving the complainant, Joseph McGowan. Any reference to, suggestion of, or production of such documentation has no relevance as to the case at bar and would be misleading to the jury. Any such instance that has not resulted in a final conviction or a valid impeachable final conviction is inadmissible under Texas Rule[s] of Evidence 608(b), 609, and 403, 404(a)."

towards the defendant, only towards the defendant.  I think under the law.

THE COURT:  Okay.

MS. HUTSON:  Your Honor, I ask, if that were the case, that prior to any sort of cross-examination of the State's witnesses, eliciting any extraneous offense instances, particular acts, not just character traits, but particular acts, the State would ask that we have a hearing outside of the presence of the jury to establish whether or not under 404(a) or 404(b), whether or not that evidence should come in.

MR. GREENLEE:  And I will agree to that.

THE COURT:  That will be granted, No. 2.

This exchange does not show that trial counsel agreed that evidence of Joseph's prior bad acts would be inadmissible; it shows that counsel agreed to approach the bench and obtain a ruling on admissibility before referencing any prior bad acts by Joseph in front of the jury.  We therefore construe appellant's first issue as complaining about trial counsel's agreement to the motion in limine only.  Appellant does not argue additionally that his trial counsel was ineffective for failing to *offer* evidence of Joseph's prior bad acts to prove that appellant was the first aggressor.

A motion in limine is a method of raising an objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means.  *Norman v. State*, 525 S.W.2d 669, 671 (Tex. Crim. App. 1975); *Thierry v. State*, 288 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  A ruling on a motion in limine does not exclude evidence or constitute a ruling on its admissibility; rather, it merely requires the parties to approach the trial court for a definitive ruling on admissibility before attempting to introduce evidence within the scope of the motion in limine order.  *Bobo v. State*, 757 S.W.2d 58, 61 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).  Such an order merely "regulates the administration of a trial."  *Harnett v. State*, 38 S.W.3d

6

650, 655 (Tex. App.—Austin 2000, pet. ref'd). Accordingly, a trial court's granting of a motion in limine is a preliminary ruling that normally preserves nothing for appellate review. *See Geuder v. State*, 115 S.W.3d 11, 14-15 (Tex. Crim. App. 2003). It follows that when defense counsel agrees to a motion in limine, counsel does not waive any rights or objections the defendant may have as to the admissibility of evidence because an order granting a motion in limine merely defers ruling on admissibility of evidence until a party offers evidence.

Appellant cites no authority holding that a defendant's trial counsel's agreement with the State's motion in limine constitutes ineffective assistance. When counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392. Based on the present record, we cannot conclude that appellant's trial counsel's agreement to the motion in limine regarding Joseph's prior bad acts meets this standard.

A defendant who raises the issue of self-defense may introduce evidence of a victim's character trait for violence pursuant to Texas Rule of Evidence 404(a)(2) to show that the victim was, in fact, the first aggressor, but the defendant may do so only through reputation and opinion testimony under Rule 405(a). *Ex parte Miller*, 330 S.W.3d 610, 619-20 (Tex. Crim. App. 2009); *Allen v. State*, 473 S.W.3d 426, 446 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd). The matters identified in the *Brady* notice are specific prior violent acts, not opinion or reputation evidence. Thus, they would not have been admissible under Rule 404(a)(2) to prove that Joseph was the first aggressor. *Ex parte Miller*, 330 S.W.3d at 619-20.

Under Rule 404(b), a victim's prior acts of violence also may be admissible to clarify the issue of first aggressor if the proffered act explains the victim's ambiguously aggressive conduct. *See Torres v. State*, 117 S.W.3d 891, 895 (Tex. Crim. App. 2003); *Torres v. State*, 71 S.W.3d 758, 762 (Tex. Crim. App. 2002); *Allen*, 473 S.W.3d at 446. But the evidence may be admitted only for reasons other than character-conformity, such as to explain the victim's specific intent, motive, or hostility in a particular case. *See* Tex. R. Evid. 404(b); *Ex parte Miller*, 330 S.W.3d at 620; *see, e.g.*, *Torres*, 117 S.W.3d at 895; *see also Torres*, 71 S.W.3d at 762 ("As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant.").

In the first aggressor context, the victim's prior violent conduct would be admissible only (1) if there is some ambiguous or uncertain evidence of a violent or aggressive act by the victim that tends to show the victim was the first aggressor and (2) if the proffered evidence tends to dispel the ambiguity or explain the victim's conduct at the time of the incident. *James v. State*, 335 S.W.3d 719, 728 (Tex. App.—Fort Worth 2011, no pet.); *see also Torres*, 71 S.W.3d at 762 ("For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct.").

Here, appellant told police officers in his recorded statement that Joseph picked up and threatened him with a long kitchen knife. According to appellant's statement, he fired the gun only after Joseph kept coming toward him and grabbed the gun barrel. Officers investigating the crime scene found a long knife on the kitchen table, fifteen feet from Joseph's body. The medical examiner also removed a pocket knife from Joseph's pants. According to appellant's version of

events, then, Joseph's alleged actions are not ambiguous or uncertain and need no explanation by referencing prior violent conduct. *E.g.*, *Smith v. State*, 355 S.W.3d 138, 151 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (victim's act of pulling a knife and attempting to stab defendant not ambiguous); *Reyna v. State*, 99 S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet. ref'd) (victim's actions of displaying gun and shooting defendant were not ambiguous).

Given the record, appellant's trial counsel may have determined that evidence supporting appellant's claim that Joseph was the first aggressor was not ambiguous and that evidence of Joseph's prior violent acts referenced in the *Brady* notice therefore would not have dispelled any ambiguity. He also may have determined that Joseph's prior bad acts were not admissible under Rule 404(a). *Ex parte Miller*, 330 S.W.3d at 620. Moreover, because agreeing to a motion in limine does not impair a defendant's right to later offer or object to evidence, we cannot say that trial counsel's action was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392. Thus, we conclude that appellant has not shown that his trial counsel provided ineffective assistance by agreeing to the State's motion in limine. *See Ruiz v. State*, No. 14-17-00408-CR, 2019 WL 758440, at *5 (Tex. App.—Houston [14th Dist.] Feb. 21, 2019, no pet.) (mem. op., not designated for publication) (holding that trial counsel's agreement to motion in limine not deficient because record did not disclose whether counsel determined evidence was inadmissible).

We overrule appellant's first issue.

## B. Reporter's Record

In his second issue, appellant argues that he was denied due process and equal protection of the law because the court reporter did not prepare the record within the time period in which to file a motion for new trial. Appellant does not

cite any rule or precedent to support his argument, and we are not aware of any authority requiring the reporter to provide the record to a defendant within the time period for filing a motion for new trial.[2]

Appellant argues that a review of the reporter's record after its completion revealed possible deficient conduct by trial counsel—other than the motion in limine complaint raised in his first issue—that could have been a basis of an ineffective assistance of counsel argument in a timely motion for new trial. Specifically, appellant identifies the following alleged deficiencies:

- Trial counsel did not present any evidence in support of an oral motion to suppress appellant's video and audio statement to police.

- Trial counsel did not present an expert to examine Joseph's toxicology report and explain the impact phencyclidine ("PCP") might have had on Joseph's behavior.

- Trial counsel failed to present evidence that could have explained the effect of anesthesia or pain medication given to appellant during and after surgery, which may have affected his cognition when interviewed by police.

- Trial counsel raised no objection to the admission of appellant's statement to law enforcement.

- Trial counsel failed to request a jury instruction on voluntariness.

- Trial counsel failed to request a jury instruction regarding Texas Penal Code Section 9.04.

- Trial counsel failed to cross-examine Precious about Joseph's known propensity to carry or not carry a weapon.

Appellant contends that a hearing is required so he may present these complaints on direct appeal, and he requests abatement of the appeal so he may file an out-of-time motion for new trial in the trial court. Texas Rule of Appellate

---

[2] We also do not see any indication that appellant requested copies of the daily transcriptions from the court reporter.

Procedure 2 authorizes an appellate court, on a party's motion or on its own initiative and in order to expedite a decision or for other good cause, to "suspend a rule's operation in a particular case and order a different procedure; but a court must not construe this rule to suspend any provision of the Code of Criminal Procedure. . . ." Tex. R. App. P. 2. A court of appeals may not use Rule 2 to suspend or enlarge appellate limits that regulate the orderly and timely process of moving a case from trial to finality of conviction. *Oldham v. State*, 977 S.W.2d 354, 359 (Tex. Crim. App. 1998).

The Court of Criminal Appeals has instructed intermediate appellate courts not to allow defendants to file out-of-time motions for new trial, "absent truly extraordinary circumstances." *Id.* at 360. "Rule 2(b) does not authorize the retroactive suspension of rules governing events that have already occurred at the trial level before the record has been conveyed to the appellate court." *State v. Garza*, 931 S.W.2d 560, 563 (Tex. Crim. App. 1996). The rule "does not authorize courts of appeals to reach back, after the appeal has been perfected and the record filed, and alter the course of events at the trial court level." *Id.*

The Austin Court of Appeals has rejected an argument similar to appellant's. *See Saint James v. State*, No. 03-05-00202-CR, 2006 WL 2505137 (Tex. App.—Austin Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication). In *Saint James*, the appellant filed a motion to abate the appeal and remand for a hearing on whether trial counsel was ineffective. *Id.* at *7 n.4. Saint James's appointed appellate counsel filed a motion for new trial but did not raise ineffective assistance of counsel claims because "the Reporter's Record had not been prepared within the time frame for filing a new trial motion and counsel could not have known of the existence of these issues prior to reviewing the Reporter's Record." *Id.* The court of appeals determined that Saint James's argument did not establish

11

good cause for the court to utilize Rule 2 to allow the appellant to file an out-of-time motion for new trial. *Id.* We likewise conclude that appellant has not shown good cause to abate the appeal and allow him to file an untimely motion for new trial.

As appellant notes in his brief, the issues he seeks to develop can be raised in a post-conviction writ of habeas corpus, which is the preferred vehicle for raising a complaint regarding trial counsel's performance. *See Jimenez v. State*, 240 S.W.3d 384, 413 (Tex. App.—Austin 2007, pet. ref'd) ("[I]n most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims."); *Pettway v. State*, 4 S.W.3d 390, 391 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (per curiam) (noting that an "appellant may raise the issue of ineffective assistance of counsel in a post-conviction habeas corpus").

Appellant suggests that habeas relief is not a viable option because he is indigent and not entitled to appointed counsel to pursue habeas relief. The Texas Code of Criminal Procedure, however, entitles an indigent habeas applicant to appointed post-conviction counsel whenever the court concludes that the interests of justice require representation. *See* Tex. Code Crim. Proc. art. 1.051(d)(3); *see also Ex parte Garcia*, 486 S.W.3d 565, 578 (Tex. Crim. App. 2016) (Alcala, J. dissenting) ("The existing statutes, therefore, provide an adequate basis upon which to conclude that appointment of counsel is required in any case in which either the pleadings or the face of the record gives rise to a colorable, nonfrivolous claim for which legal expertise is required in order to ensure that the claim is afforded meaningful consideration.").

In keeping with the above authority, this court has held that an appellant's rights were not violated by requiring him to follow habeas procedure to develop an

ineffective assistance claim. *See Lewis v. State*, 686 S.W.2d 243 (Tex. App.—Houston [14th Dist.] Jan. 10, 1985), *aff'd*, 711 S.W.2d 41 (Tex. Crim. App. 1986). In *Lewis*, like here, the appellant filed a motion to abate the appeal to conduct a hearing on trial counsel's alleged ineffectiveness rather than invoking habeas procedure after the direct appeal concluded:

> [T]he appeal should be abated in the interest of judicial economy. If the evidentiary hearing is not conducted at this point, and the direct appeal is affirmed, appellant would have to file an application for writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure to develop the issues. Appellant is sure that it has been noted that his counsel is court-appointed on this direct appeal and, of course, the presumption exists that one who is indigent on the appeal would be too poor to retain a habeas attorney.

*Id.* at 246. We denied the motion, explaining, "Appellant is not *denied* the right to properly assert his claim; he is merely required to follow established procedure and assert it in a post-conviction proceeding." *Id.* at 247.

Accordingly, we conclude that appellant has not demonstrated that he was denied due process or equal protection of the law because the reporter's record was not completed within the time period for filing a motion for new trial. We overrule appellant's second issue.

13

## Conclusion

Having overruled appellant's dispositive issues,[3] we affirm the trial court's judgment.

/s/    Kevin Jewell
Justice

Panel consists of Justices Jewell, Spain, and Wilson.  (Spain, J., concurring)

Publish — Tex. R. App. P. 47.2(b).

---

[3] In a third issue, appellant requested this court to abate the appeal and order the trial court to prepare findings of facts and conclusions of law regarding the voluntariness of appellant's statement to law enforcement.  *See* Tex. Code Crim. Proc. art. 38.22, § 6.  On December 1, 2022, we abated the appeal and directed the trial court to make the required findings and conclusions.  On December 16, 2022, the trial court signed the findings and conclusions.  On January 31, this court reinstated the appeal.  Therefore, appellant has received the relief sought by his third issue, and we overrule the issue as moot.

14